**Dimitrious ZAVRADINOS, et al.,**
**Plaintiff–Appellant,**

v.

**Hal A. LUND, Jr., et al.,**
**Defendant–Respondent,**

and

**W.H. Zoellner Realty Co., Respondent.**

**No. 52400.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Dec. 22, 1987.

Benson Cytron, House Springs, for Zavradinos.

Robert J. Robinson, Crystal City, for Lund.

Robert L. Meyer, St. Louis, for Zoellner.

KAROHL, Presiding Judge.

Alexander Zavradinos (Buyer), a partner of the Central West End Group, appeals a trial court judgment entered in favor of Hal A. Lund Jr. and wife (Sellers) and against the partners in the amount of

---

$290,000 actual damages and $350,000 punitive damages for breach of contract and fraud. The Lunds contracted to sell commercial real estate to the partnership. The suit was brought after the sale did not close. Zavradinos also appeals a summary judgment in favor of W.J. Zoellner Realty Co. for a $60,000 real estate sales commission.

The sufficiency of the evidence is at issue. Accordingly, we review the evidence in the light most favorable to the decision. *Baker v. McCue–Moyle Dev. Co.*, 695 S.W. 2d 906, 911 (Mo.App.1984). Hal and Karen Lund, defendants, bought Meadow Bluff Apartments ("the property") from Custom Builders Corporation on May 4, 1979. The Lunds financed their purchase through a purchase money note and deed of trust to Custom Builders. By the fall of 1982 the Lunds had fallen into financial difficulty. They arranged with Custom Builders to pay only the interest on the monthly mortgage payment. At that time the Lunds decided to sell the property and retained Zoellner Realty to handle the sale. The property remained on the market until spring, 1983.

In April or May, 1983, Alexander Zavradinos, his brother Dimitrios Zavradinos and Mein Aldrich orally agreed to form a general partnership. The Central West End Group ("the partnership") was established to buy and manage rental properties. The partnership was dissolved in July, 1985.

On May 24, 1983 Alexander and Mein met Lund and Zoellner for the first time. At this meeting a general sales contract was executed for the sale of Meadow Bluff Apartments by Hal Lund to the partnership. The contract provided for a $500.00 earnest deposit, no money down, and for the Lunds to carry a $294,500 second deed of trust on the property. The contract contains the following provisions (handwritten additions are underlined):

This contract is contingent upon the availability to purchaser of financing as set forth below to be secured by deed or deeds of trust on said property. If commitment therefor be not obtained by 5:00 p.m. of <u>Mar. 24, 1983,</u>[1] this contract shall be null and void and said earnest deposit returned to purchaser less any expense incurred by or in behalf of purchaser. Said financing being <u>subject to approval of holder of existing financing. Purchaser to take possession of subject property on June 1, 1983 and to pay monthly payment of $7,064.06 for June payment and to pay the monthly payment each succeeding month thereafter. Purchaser to hold Seller harmless from any acts or liens whatsoever.</u>

The contract also contained the following handwritten special agreements:

Purchaser to pay $2800.00 to Seller on October 1, 1983 and a like amount on the first day of succeeding months thereafter until property is refinanced, with Balance due and payable in three years from May 24, 1983. Purchaser reserves the right to prepay at any time without penalty.

Purchaser to pay $20,000.00 commission on July 24, 1983 to W.J. Zoellner Realty Co. Beginning November 1, 1983 Purchaser to pay $3000.00 to W.J. Zoellner Realty Co. and a like amount on the first of each month thereafter until the remaining $40,000.00 (after initial $20,-000.00 has been paid) is fully paid.

The contract stipulated a June 15, 1983 closing date.

On June 16, 1983 a meeting was held at the office of Lund's attorney to close the sale. At least two events occurred at this meeting relevant to this appeal. First, although the Lunds signed quit-claim and general warranty deeds, the partnership received neither. Second, Custom Builders (holders of the original financing for the Lunds) refused to allow assumption of the loan by the partnership. The sale contract was contingent upon approval.

---

**1.** This provision makes the contract impossible by its terms. The intended date of closing was June 15, 1983.

Sometime in September, 1983 Custom Builders began foreclosure proceedings on Lund's note and deed of trust. Also in September, the partnership filed suit against the Lunds, Custom Builders, and W.J. Zoellner Realty Co. This petition was not included in the record filed on appeal. Those claims were dismissed or settled before trial. The case was tried on counterclaims of Lund and Zoellner Realty. The court entered summary judgment on December 11, 1984 against the partnership for $60,000 real estate commission due W.J. Zoellner Realty Co. The court proceeded to hear the Lunds' counterclaim on March 24 and June 27, 1986. The counterclaim consists of four counts. Count I alleges breach of contract in that the partnership failed to use its best efforts to obtain approval of the assumption, failed to make the monthly payments to Custom Builders, and failed to hold the Lunds harmless. Count II alleges fraud in that the Lunds relied on representations of the partnership to do those acts listed in Count I and these misrepresentations were malicious and intentional. Count III alleges a conspiracy between the partnership and Custom Builders to foreclose the property at the Lunds' expense. Count IV alleges failure of the partnership to make an accounting to the Lunds after taking possession of the property. The counterclaim requested $350,000 actual damages, $1 million punitive damages, an accounting, and the appointment of a receiver to control the property.

On August 8, 1986 the court entered its findings of fact, conclusions of law and judgment. The court found and held, *inter alia:*

The Lunds, after reviewing the financial condition as represented by the Central West End Group and relying on these representations, decided to go forward and enter into a Contract for the sale of the property in question to these three individuals.

\* \* \* \* \* \*

As of May 24, 1983 Bill McGinnis, President of Custom Builders, testified there was approximately $775,000.00 due from the Lunds to Custom Builders Corp. on the purchase money mortgage arising out of the Lund's purchase of the property originally. Central West End Group contracted to pay to the Lunds a total of $1,065,000.00 for the property in question. Therefore, the Lunds would have received $290,000.00 over and above the amount of their obligation to Custom Builders Corp. based upon the representations of the Central West End Group.

The court finds that ... the partners prepared a Financial Statement that contained material misrepresentations of the assets and liabilities of the Central West End Group. That this Financial Statement was *presented to the Lunds* to induce the Lunds to enter into a Contract for the sale of property to the Central West End Group. ... That as a result of the false representations made by the Central West End Group they were able to perpetrate a fraud upon the Lunds and the Lunds sustained a loss of their bargain ... (our emphasis)

The court entered a judgment in favor of the Lunds for $290,000 actual damages and $350,000 punitive damages.

Alexander Zavradinos brings two claims of error on appeal. First, he alleges trial court error in concluding that the false financial statement which was neither prepared nor seen by the Lunds or Custom Builders prior to June 16, 1983 supports a finding of fraud perpetrated by the partnership on the Lunds. Second, he argues that the court erred in granting summary judgment for W.J. Zoellner Realty Co. when it neither pleaded nor proved it was a licensed broker pursuant to Section 339.160 RSMo 1986.

The standard of review for court-tried cases is clear. Under *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976), we will not disturb the trial court's decision unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Id.* at 32. A simple

perusal of the trial transcript reveals that the court's findings of fact and conclusions of law are clearly erroneous.

The trial court's findings do not correlate at all with the evidence presented at trial. The Lunds' counterclaim alleges breach of contract, fraud in the performance, and failure to make an accounting. The trial court found fraud in the inducement and breach of contract. The court never addressed the accounting issue. The trial testimony is uncontradicted that on May 24, 1983 Hal Lund and Alexander Zavradinos signed a general real estate sales contract. By its terms the contract was contingent upon the partnership finding financing subject to the approval of Custom Builders. The parties contemplated the partnership would assume the Lunds' mortgage plus execute a second deed of trust for the balance of the purchase price. All participants knew consent from the holder of the first note was a keystone prerequisite to the sale. Custom Builders never gave its approval for assumption, thereby voiding the contract on its terms.

The facts relating to the issue of fraud are also clear and undisputed. Mr. Sauter, attorney for Custom Builders, testified he requested the financial and cash flow statements *after* the June 16th meeting. Mr. Lund testified that he did not see the false financial statement until sometime *after* the June 16th meeting. There can be no misstatement, fraud, or reliance on any statement which was not prepared until at least a month after the contract was signed. The financial statement may have been admissible to show possible bad faith by the partnership in failing to keep three alleged promises of future acts. But it could not prove a fact which the Lunds did not dispute, i.e., they signed a contract without reference to any non-existent financial statement. The Lunds failed to prove that the partnership did not intend to keep any of the listed promises at the time they were made (May 24, 1983). A claim of fraud or misrepresentation requires pleading and proof of statements of existing facts that were false when made. *Rigby Corp. v. Boatmen's Bank and Trust Co.*, 713 S.W.2d 517, 539 (Mo.App.1986); *Sofka v. Thal*, 662 S.W.2d 502, 507 (Mo. banc 1983). For failure to prove the necessary elements of fraud, the Lunds cannot recover under this theory. We reverse the trial court's judgment in favor of the Lunds on their counterclaim against appellant Alexander Zavradinos.

The second issue on appeal challenged the trial court's order granting W.J. Zoellner Realty Co. summary judgment when the company neither pleaded nor proved its status as a licensed broker. The parties announced at oral argument that this issue was now moot. Accordingly we do not reach or decide this matter.

The trial court's judgment in favor of defendants on their counterclaim and against plaintiff Alexander Zavradinos is reversed.

SMITH and KELLY, JJ., concur.