INFORMATION TECHNOLOGIES,
INC., Plaintiff/Appellant,

v.

CYBERTEL CORPORATION, d/b/a
Ameritech Cellular Services, now
known as Cybertel Cellular Telephone
Company, d/b/a Verizon wireless, Defendant,

and

Stuart Huels, Defendant/Respondent.

No. ED 79893.

Missouri Court of Appeals,
Eastern District,
Division One.

Dec. 11, 2001.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Jan. 24, 2002.

Application for Transfer Denied
Feb. 26, 2002.

Ann E. Buckley, William M. Corrigan, Jr., Daniel C. Nelson, Armstrong Teasdale LLP, St. Louis, MO, for appellant.

Jeffrey J. Kalinowski, Gregory J. Minana, R. Prescott Sifton, Jr., Blackwell Sanders Peper Martin, LLP, St. Louis, MO, for respondent.

CHARLES B. BLACKMAR, Senior Judge.

Plaintiff, Information Technologies, Inc. (ITI), brought suit against Cybertel Corp. (Ameritech) and Ameritech's sales manager, Stuart Huels (Huels). The business of ITI includes developing and selling computer software for law enforcement agencies to use in dispatching, reporting, and communications functions. The corporate defendant, formerly known as Cybertel Corp., which has undergone several reorganizations in recent years, but which is currently known as Ameritech, is a major figure in the communications industry. The individual defendant, Huels, became sales manager for Ameritech during 1996 and dealt directly with ITI. This case involves Ameritech's Cellular Digital Packet Data (CDPD) business for the wireless transmission of data to and from laptop computers. As will be seen, this appeal involves only issues between ITI and Huels.

Ameritech and ITI had a business relationship which began some time prior to July 31, 1995 and continued until it was terminated by Ameritech by letter, in February, 1999. Following the termination ITI filed the suit now before us, in four counts. Counts I and II state claims based on contract solely against Ameritech, and are not involved in this appeal. Count III, a fraud claim, and Count IV, prima facie tort, both name Ameritech and Huels as defendants.

Huels and Ameritech both moved for summary judgment on all four counts and generated a voluminous record. The trial court overruled the motion as to Counts I and II, but sustained it as to Counts III and IV. Thereafter, the trial court entered judgment of dismissal with prejudice in favor of both defendants. On motion of ITI the court entered a separate final judgment in favor of Huels, pursuant to Rule 74.01(b). Inasmuch as the separate judgment fully disposed of all issues involving Huels, it was appropriately made final and appealable. *See Beckmann v. Miceli Homes*, 45 S.W.3d 533, 538 (Mo. App.2001).

ITI did not brief any claim of error in the dismissal of Count IV and essentially conceded at oral argument that it was not pressing this claim. Therefore, we dismiss the appeal as to Count IV.

Our law as to summary judgment has been developed and clarified in recent years. *Martin v. City of Washington*, 848 S.W.2d 487, 489 (Mo. banc 1993); *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371 (Mo. banc 1993). When considering appeals from summary judgments, we view the record in the light most favorable to the party against whom judgment was entered. *ITT*, 854 S.W.2d at 376. Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion. *Id.* We accord the non-movant the benefit of all reasonable inferences from the record. *Id.* Here, summary judgment was entered against the party having the burden of proof.

The "defending party" may prevail by demonstrating that there is no genuine issue of fact as to any one of the essential elements of the plaintiff's claim. *Id.* at 381. In ruling on the motion, however, all facts as to which any dispute is demonstrated are resolved in favor of the non-moving party and that party is afforded the benefit of all favorable inferences which may be reasonably drawn from the facts shown by the record. *Id.* at 376. The movant must satisfy the court that a trial would serve no useful purpose. Summary judgment should be entered only in a clear case and doubts should be resolved in favor of trial.

The voluminous motion documents disclose a dispute as to which contracts governed the parties' relationship. ITI asserts that the relationship began with an oral contract, dubbed the "handshake agreement," which was entered into some time prior to July 31, 1995 and, as ITI claims, memoralized or supplemented by a letter from Huels to ITI, written at the request of ITI's officers, dated March 29, 1996. ITI places strong reliance on the following statements in the March 29, 1996 letter:

> ".... [ITI] is Ameritech Cellular's official Value Added Dealer (VAD) of choice for wireless law enforcement opportunities within the Missouri market. My staff will forward all wireless data sales opportunities within the law enforcement community directly to your organization for closing and sales credit...."

"In return, I understand that ITI agrees to similarly engage Ameritech Cellular in any and all cellular voice opportunities that may develop as a result of successful data sales efforts within in the law enforcement community...."

Without commenting on the contract issues, which are not before us, it is appropriate to observe that the letter on its face reflects mutual promises and consideration.

The defendants assert that the governing contracts are two agreements drafted by Ameritech and signed by ITI on July 31, 1995. ITI claims that these agreements relate to different subject matter and that Ameritech's representatives told ITI's people that they could ignore them. Because the trial court overruled the motion for summary judgment as to Counts I and II, the contract counts, the trial court could not say that there were no genuine issues of fact as to these claims. Accordingly, we do not review this holding in the present appeal because the contract issues are not before us.

ITI charges, essentially, that at the time Huels wrote the letter of March 29, 1996, he made promises which he did not consider binding and had no intention of performing if he determined that such performance was not in the best interest of Ameritech. It goes on to argue that an apparent promise made under these circumstances constitutes an actionable fraud.

In support of this claim, ITI does not point out any statements by Huels at the time the letter was sent demonstrating a present intention of not performing. Rather, it relies on statements made some time later, beginning, according to ITI's pleadings, some time in 1997. These include such statements as ".... And in writing this letter I wasn't making a promise. .... I don't make promises at work.

It's a business. ...." There is also evidence that Huels said, some time after writing the letter, "I could cut him off any time I want. This letter isn't worth the paper it's printed on. I could cut him off at the knees and I'll do whatever I want." This statement was made to a fellow employee who raised a question about Huels's having promised an agency other than ITI activation and residual fees from CDPD sales to a Missouri public entity.

Huels objects that there is no evidence in the record indicating that the letter did not truly reflect his intention at the time he wrote it. We believe, however, that, in the absence of any indication that he later changed his position, the trier of the fact could infer that his later statements were probative of his intent at the time he wrote the letter. *See generally Breier v. Koncen Meat Co.*, 762 S.W.2d 499, 500–01 (Mo. App.1988) (evidence of conduct prior to and subsequent to the agreement was sufficient to create a question of fact for the [trier of fact]. Therefore, intent at the time the promise was made was an issue for the jury to decide).

■ It is well settled in Missouri that a promise made without the present intention to perform is a misrepresentation sufficient to demonstrate fraud. *Null v. K. & P. Precast, Inc.*, 882 S.W.2d 705, 708 (Mo. App.1994); *Chesus v. Watts*, 967 S.W.2d 97, 111 (Mo.App.1998); *Slone v. Purina Mills*, 927 S.W.2d 358, 373 (Mo.App.1996). These cases follow the leading Missouri case of *Sofka v. Thal*, 662 S.W.2d 502, 507 (Mo. banc 1983).

The trial court, in entering summary judgment on Counts III and IV, cited *Zavradinos v. Lund*, 741 S.W.2d 863, 866 (Mo.App.1987) for the proposition that "a plaintiff may not claim fraud because he relied on a statement that was made after the contract was signed." Huels under-

standably places strong emphasis on this case, but it is clearly distinguishable because, in that case, a claimant relied on an allegedly false and fraudulent financial statement uttered after a binding contract had been signed. Thus, the fraudulent statement could not have induced the claimant to enter into the contract. *Williams v. Mercantile Bank of St. Louis*, 845 S.W.2d 78 (Mo.App.1993) is also distinguishable because, there, the fraud claim was premised upon *misrepresentation* made *after* the transaction was entered into. These holdings do not blunt the evidentiary force of the statements and representations made after the delivery of Huels's letter of March 29, 1996, because, as we have pointed out, they are probative of Huels's state of mind at the time he wrote the letter. The evidence of the later statement, furthermore, serves to distinguish another case strongly relied on by Huels, *Titan Construction Co. v. Mark Twain Kansas City Bank*, 887 S.W.2d 454 (Mo.App.1987), in which the court held that a subsequent breach of a contract did not constitute substantial evidence that the defendant bank's representation that it intended to comply with the contract was fraudulent when made.

Huels also argues that the sales and equipment contracts executed July 31, 1995 precluded ITI's fraud claim. In so arguing Huels assumes that Ameritech's position as to the governing contractual provisions is legally sound. The trial court did not resolve this point, but, rather, overruled Ameritech's motions for summary judgment and it would be inappropriate for us to take any position on this issue in this appeal.

Numerous cases set forth the multiple and strict requirements for maintaining a fraud claim. See the listing in *Sofka v. Thal, supra*, 662 S.W.2d at 506. We discuss only those in which Huels asserts

that ITI has failed to demonstrate the presence of a genuine issue of fact. After examining the record we are unable to say that there is no genuine issue of fact as to whether Huels made promissory representations in his 1996 letter which, at that time, he had no intention of fulfilling. We simply hold that this issue may not be disposed of without a trial. We express no opinion as to whether, when all the evidence is in, the plaintiff's proof will be legally sufficient.

We recognize that the dismissed Count III stated claims against both Huels and Ameritech. Ameritech's motion for summary judgment was sustained, and the trial court's action in doing so was not appealable because other counts were then, and still are, pending against Ameritech. We perceive that the trial court may be asked to reconsider its ruling in favor of Ameritech on Count III, which it could do in the absence of a final and appealable judgment. We express no opinion as to how the court below should rule on any such request.

The appeal is dismissed as to Count IV. The judgment in favor of Huels on Count III is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

WILLIAM H. CRANDALL, JR., P.J. and ROBERT G. DOWD, JR., J. concur.