**ANSELL HEALTHCARE PRODUCTS, INC., Appellant,**

v.

**UNITED MEDICAL, Appellee.**

**No. 01–10–00541–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

July 14, 2011.

Gene F. Creely, II, Creely Law Firm PLLC, Houston, TX, Michael A. Hatchell, Locke Lord Bissell & Liddell, LLP, Austin, TX, for Appellant.

Janis H. Detloff, Kevin F. Risley, Thompson, Coe, Cousins, & Irons, L.L.P., Houston, TX, for Appellee.

Panel consists of Justices KEYES, HIGLEY and BAKER.*

## OPINION

EVELYN V. KEYES, Justice.

Ansell Healthcare Products, Inc. appeals from a judgment in favor of United Medical on its claim for indemnity under Section 82.002 of the Texas Civil Practices and Remedies Code (the "CPRC"). Ansell contends that United Medical failed to properly segregate its indemnifiable losses, that the attorney's fees award is unreasonable as a matter of law, and that trial court erred by failing to make the appellate attorney's fees awards contingent on success on appeal. We conclude that the evidence supports the trial court's awards for indemnity and attorney's fees but that the award for appellate attorney's fees must be conditioned on which party prevails on appeal. We modify the award of appellate attorney's fees accordingly and affirm the judgment as modified.

## Background

After her daughter, Cheyanne, suffered an allergic reaction to latex gloves while at

---

\* The Honorable Caroline Baker, 295th District Court of Harris County, Texas, sitting by as-  signment.

Texas Children's Hospital, Lisa Talley brought a products liability action against more than thirty defendants that Talley alleged were "in the business of manufacturing, designing, assembling, fabricating, distributing, supplying, and/or selling latex-containing products and specifically latex gloves used generally in the health care field and more specifically during multiple surgeries performed at Texas Children's hospital on [Cheyanne.]" United Medical and Ansell were among the defendants named in Talley's suit. United Medical filed a cross-action for indemnity against Ansell and other defendants.

In 2002, Talley nonsuited her claims against United Medical. United Medical then filed a motion for partial summary judgment on its cross-claims against Ansell and another defendant, Safeskin Corporation, on the basis of Chapter 82 of the CPRC. United Medical argued that it was an innocent seller under Chapter 82 and thus entitled to indemnification for its expenses in defending the Talley claims from Ansell and Safeskin, who manufactured the latex gloves United Medical sold to Texas Children's Hospital. *See* TEX. CIV. PRAC. & REM.CODE § 82.002(a) ("A manufacturer shall indemnify and hold harmless a seller against loss arising out of a products liability action, except for any loss caused by the seller's negligence, intentional misconduct, or other act or omission, such as negligently modifying or altering the product, for which the seller is independently liable."). The trial court granted United Medical's partial summary judgment on liability against Ansell and Safeskin.

Subsequently, United Medical settled with Safeskin, and Ansell settled with Talley. For years after the summary judgment on liability and the resolution of the Talley claims, United Medical and Ansell hotly contested the scope of Ansell's indemnification duty to United Medical.

From 2003 through 2010, Ansell and United Medical filed numerous, voluminous motions in the trial court, including motions for partial or complete summary judgment. The trial court denied these motions and conducted a bench trial to determine the amount of Ansell's indemnity obligation to United Medical. At trial, United Medical presented expert testimony that its recoverable attorney's fees totaled $329,781.30. According to the testimony, this figure consisted of United Medical's reasonable and necessary attorney's fees incurred for (1) defending the Talley claims with respect to Ansell, exclusive of fees relating to Safeskin and fees incurred after United Medical was nonsuited, and (2) prosecuting its indemnity claim against Ansell through the end of trial. The trial court expressly found this testimony to be credible. Ansell put on expert testimony that United Medical should have expended minimal efforts to defend the Talley claims because, as a pass-through distributor protected under Chapter 82 of the CPRC, United Medical had little or no risk. Ansell's expert testified that reasonable and necessary attorney's fees for United Medical to defend the Talley claims would have been $22,475 and that none of this amount was attributable to Ansell's product as opposed to Safeskin's product. The trial court expressly found this testimony to be less credible than the expert testimony offered by United Medical.

After the close of evidence, the trial court entered judgment awarding United Medical:

- $74,037.11 plus interest pursuant to Ansell's Chapter 82 indemnification obligation in the Talley action,

- $249,220.49 for attorney's fees in prosecution of the indemnity claim against Ansell through trial,

- $30,000 in attorney's fees in the event of an appeal to the court of appeals,
- $12,500 in the event of a petition for review to the Texas Supreme Court, and
- $15,000 in the event review is granted by the Texas Supreme Court.

This appeal ensued.

## Standard of Review

Ansell's appeal presents both questions of law and questions touching on the sufficiency of the evidence. We review questions of law de novo. *In re Humphreys,* 880 S.W.2d 402, 404 (Tex.1994); *Harris Cnty. Appraisal Dist. v. Wilkinson,* 317 S.W.3d 763, 766 (Tex.App.-Houston [1st Dist.] 2010, pet. denied). In conducting a legal sufficiency review, we review the evidence presented below in the light most favorable to the judgment, crediting favorable evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Del Lago Partners, Inc. v. Smith,* 307 S.W.3d 762, 770 (Tex.2010); *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex.2005). So long as the evidence falls within the zone of reasonable disagreement, we may not substitute our judgment for that of the factfinder. *City of Keller,* 168 S.W.3d at 827. The trier of fact is the sole judge of the credibility of the witnesses and the weight accorded to their testimony. *Id.* at 819.

In a factual sufficiency review, the court must examine the evidence both supporting and contrary to the judgment. *See Dow Chem. Co. v. Francis,* 46 S.W.3d 237, 242 (Tex.2001). In reviewing a factual-sufficiency challenge to a jury finding on an issue on which the party did not have the burden of proof, we consider and weigh all of the evidence and set aside the verdict only if the evidence that supports the jury finding is so weak as to make the verdict clearly wrong and manifestly unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). Because it is the fact-finder's province to resolve conflicting evidence, we must assume that the fact-finder resolved all evidentiary conflicts in accordance with its decision if a reasonable person could have done so. *See Golden Eagle Archery, Inc. v. Jackson,* 116 S.W.3d 757, 761 (Tex. 2003). An appellate court may not impose its own opinion to the contrary of the fact-finder's implicit credibility determinations. *Id.*

## The Indemnity Award

### A. Chapter 82's Duty to Indemnify

With certain exceptions, Chapter 82 of the CPRC obligates manufacturers to indemnify innocent sellers from products liability actions arising out of their products. TEX. CIV. PRAC. & REM.CODE ANN. § 82.002. This duty is a creature of statute, new and distinct from the duties owed by manufacturers under the common law. *Owens & Minor, Inc. v. Ansell Healthcare Prods., Inc.,* 251 S.W.3d 481, 483–84 (Tex.2008) (comparing common law duty to statutory duty); *Fitzgerald v. Advanced Spine Fixation Sys., Inc.,* 996 S.W.2d 864, 866 (Tex. 1999) ("The duty [to indemnify] is a new, distinct statutory duty...."). Over the years since its enactment, the Supreme Court of Texas has provided guidance on nature of the duty to indemnify under Chapter 82. *E.g., Owens & Minor, Inc.,* 251 S.W.3d 481 (clarifying who is a "manufacturer" under the Act and the scope of the manufacturer's duty); *Meritor Auto., Inc. v. Ruan Leasing Co.,* 44 S.W.3d 86 (Tex.2001) (clarifying what is included in a "products liability action" under the Act and when the exclusion for a seller's own misconduct applies);[1] *Fitzgerald,* 996

---

1. In *Meritor Automotive,* the court addressed      what claims are included within a "products

S.W.2d 864 (clarifying who is a "seller" under the Act).[2]

In *Owens & Minor*, which also arose out of a latex allergy products liability action against multiple manufacturers and sellers, seller-defendant Owens sought to recover Chapter 82 indemnity from Ansell and another manufacturer-defendant, Becton, Dickinson and Company, even though Ansell and Becton were not the manufacturers of the products sold by Owens. 251 S.W.3d at 482. Ansell and Becton offered to defend and indemnify Owens against the products liability action, but only with respect to their own products. *Id.* Owens rejected these offers, and the products liability plaintiff ultimately nonsuited Owens. *Id.* at 483. Owens filed cross-claims for indemnity from Ansell, Becton, and other manufacturer-defendants with which Owens later settled. *Id.* Ansell and Becton moved for summary judgment on Owens's cross-claims on the ground that they had satisfied their Chapter 82 indemnity obligation by offering to defend and indemnify Owens with respect to their own products. The trial court granted the summary judgment.

On appeal, Owens argued that it was entitled to indemnity from Ansell and Becton regardless of whether they were the manufacturers of the products it sold. The Supreme Court of Texas disagreed. The supreme court observed that the plaintiff's pleadings were sufficient to trigger each manufacturer-defendant's duty of indemnification, but this duty did not make each manufacturer liable to indemnify every seller in the case for all of its costs. *Id.* at 484. The court held that an entity qualifies as a "manufacturer" under Chapter 82 only with respect to the products it manufactured. *Id.* at 485; *see also* TEX. CIV. PRAC. & REM.CODE ANN. § 82.001(4) (defining "manufacturer" as "a person who is a designer, formulator, constructor, rebuilder, fabricator, producer, compounder, processor, or assembler of any product or any component part thereof and who places the product or any component thereof in the stream of commerce"). Thus, the court concluded that a manufacturer's duty to indemnify under Chapter 82 extends only to claims related to the sale of the manufacturer's own products. *Id.* at 489; *see also id.* (Brister, J., concurring) ("[A] retailer is not required to *prove* that a defendant's product caused the plaintiff's injury (and thus its own defense costs), only that a plaintiff's *allegation* about the defendant's product did so.")

liability action" for which a seller is entitled to indemnity and when the statutory exception to the duty to indemnify, excluding loss caused by the seller's own misconduct, applies. The court determined that the duty to indemnify extends to all claims properly joined to a claimant's products liability action, including a negligence claim against a seller. 44 S.W.3d at 89–90. The court also determined that, while a manufacturer's duty to indemnify is invoked by the claimant's pleadings, the statutory exception to the duty to indemnify is established only by a finding that a seller's independent conduct was a cause of the plaintiff's injury. *Id.* at 91 (holding that, after claimant settled products liability claims against manufacturers and nonsuited products liability and negligence claims against seller, seller was entitled to indemnity from manufacturer for negligence claims).

**2.** In *Fitzgerald*, the court addressed who is entitled to indemnity under Chapter 82. *Fitzgerald*, 996 S.W.2d at 866–67. The court determined that, subject to the statutory exclusion for the seller's independent misconduct, a manufacturer's duty to indemnify arises in favor of any entity that falls within the definition of a "seller" and is alleged to be liable on the basis of its sale of the manufacturer's product, regardless of the outcome of the products liability action. 996 S.W.2d at 867 (holding that seller who was dismissed from suit upon determination that it did not sell the specific products that caused the injury was still entitled to indemnity from manufacturer).

## B. United Medical's Indemnifiable Costs

In its first argument on appeal, Ansell contends that, under *Owens & Minor*, United Medical was required to "segregate its defense costs between manufacturers named in the Talleys' pleadings" and failed to do so. Ansell asserts that the reason United Medical sought indemnity only from Ansell and Safeskin was that discovery showed that these were the only manufacturers whose products United Medical sold to Texas Children's Hospital, where Cheyanne's injury occurred. Ansell argues that this was impermissible because, under *Fitzgerald*, the duty of indemnification arises out of the pleadings and subsequent discovery may not be considered.

*Meritor Automotive*, *Owens & Minor*, and *Fitzgerald* set up three parameters for determining the Chapter 82 indemnity obligations between a seller and a manufacturer.

First, is the claim part of a products liability action? *See Meritor Automotive*, 44 S.W.3d at 89–90. Here, the parties do not dispute that the answer to this question is "yes."

■ Second, is the party seeking indemnity an innocent seller to which an indemnity duty is owed? *See Fitzgerald*, 996 S.W.2d at 867. Under *Fitzgerald*, the answer to this question is "yes" if the party satisfies the criteria for an innocent seller under the Act and liability is asserted against the party on the basis of its alleged sale of a manufacturer's product. 996 S.W.2d at 867; *see also* TEX. CIV. PRAC. & REM.CODE ANN. §§ 82.001(3) (defining "seller" as "a person who is engaged in the business of distributing or otherwise placing, for any commercial purpose, in the stream of commerce for use or consumption a product or any component part thereof"), 82.002(a) (providing for indemnity of innocent seller—i.e., seller whose loss

was not caused by its own, independent misconduct). Here, the answer to this second question is "yes" because Talley alleged that United Medical was liable for its sale of latex gloves manufactured by Ansell, Safeskin, and/or other defendants and there is no finding that United Medical engaged in any independent misconduct. *See Fitzgerald*, 996 S.W.2d at 867; *see also Meritor Automotive*, 44 S.W.3d at 91 (holding that statutory exception for seller's independent misconduct arises only when established by finding).

■ Third, is the party from whom indemnity is sought a "manufacturer" who owes a duty to indemnify sellers, and if so, what is the scope of that duty? *See Owens & Minor*, 251 S.W.3d at 486–89. Here, Ansell is a manufacturer of latex gloves sold by United Medical. The dispute is over the scope of Ansell's indemnification duty to United Medical. Under *Owens & Minor*, Ansell's duty extends only to defense costs incurred with respect to claims related to the latex gloves manufactured by Ansell. *Id.* at 489. At trial, United Medical put on expert testimony that the expenses it sought to recover with regard to defending the Talley claims were only those relating to gloves manufactured by Ansell. United Medical put on evidence that it had also incurred costs in defending claims relating to latex gloves manufactured by Safeskin, but it excluded those costs from the costs it sought to recover from Ansell.

■ Ansell's position on appeal is that United Medical necessarily incurred some costs in defense of products manufactured by the other named manufacturer-defendants, and that it failed to account for those costs by subtracting them from the expenses incurred in defending the Talley claims. We disagree that United Medical necessarily incurred costs in defending

claims relating to other manufacturer's latex gloves but not Ansell's gloves. Some of United Medical's legal work may have been useful with respect to all claims asserted against it, but when litigation costs are reasonably and necessarily incurred in defense of a claim for which costs are recoverable, they are not rendered unrecoverable merely because they are also reasonable and necessary with respect to other claims for which costs are not recoverable. *See Tony Gullo Motors I, L.P. v. Chapa,* 212 S.W.3d 299, 313 (Tex.2006) ("Requests for standard disclosures, proof of background facts, depositions of the primary actors, discovery motions and hearings, *voir dire* of the jury, and a host of other services may be necessary whether a claim is filed alone or with others. To the extent such services would have been incurred on a recoverable claim alone, they are not disallowed simply because they do double service."); *see also Owens & Minor,* 251 S.W.3d at 490–91 (Brister, J., concurring) (quoting *Chapa* for same principle).

Moreover, regardless of whether United Medical incurred costs relating to other defendants' products, Owens identifies no basis for discrediting United Medical's evidence that the specific costs it sought to recover from Ansell were incurred in defending claims relating to Ansell's product. Ansell's trial strategy was not to disprove that specific expenses related to its product but to attack the amount of expenses through expert testimony that United Medical should have done little to defend the Talley claims and relied on its right to indemnity—the very indemnity Ansell re-

sists here.[3] United Medical put on evidence that the costs it sought to recover were incurred in relation to Ansell's product, and the trial court, as finder of fact, was free to credit that evidence. *See City of Keller,* 168 S.W.3d at 819.

## C. Settlement Credit

■ Ansell argues, in the alternative, that "[w]ere the Court to hold that Ansell and Safeskin could be targeted for joint and several liability under § 82.003," Ansell would be entitled to a settlement credit in the amount of United Medical's settlement with Safeskin pursuant to the "one satisfaction rule." There is no joint and several liability between Ansell and Safeskin here. The issue tried was the amount of damages incurred by United Medical as a result of Ansell's breach of its Chapter 82 duty to indemnify United Medical; the evidence presented related to defense costs incurred by United Medical in defending claims relating to Ansell's product, expressly excluding costs relating to Safeskin's products; and the trial court's judgment is against Ansell alone and awards damages only for Ansell's breach of its duty to indemnify. The "one satisfaction rule" does not apply to these facts. *See Crown Life Ins. Co. v. Casteel,* 22 S.W.3d 378, 391 (Tex.2000) ("Under the one satisfaction rule, the nonsettling defendant may only claim a credit based on the damages for which all tortfeasors are jointly liable.").

### The Attorney's Fees Award

In its second and third arguments on appeal, Ansell argues that the trial court's

---

**3.** At trial, Ansell also offered expert testimony that none of United Medical's costs could be attributed to Ansell's product because Ansell's gloves were not among the gloves to which Cheyanne was exposed. The issue for indemnity, however, is not whether Ansell's products are ultimately found responsible for the plaintiff's injuries—an issue often left unre-

solved due to settlement, as occurred here. Instead, the issue is whether the costs were incurred in defending claims alleged against the seller on the basis of its sale of the manufacturer's product. *See Fitzgerald,* 996 S.W.2d at 867; *Owens & Minor,* 251 S.W.3d at 486–89.

award of attorney's fees is unreasonable as a matter of law and that the trial court erred in failing to condition recovery of appellate attorney's fees on the outcome of the appeal.

## A. Reasonableness of the Attorney's Fees at Trial

Ansell argues that the award of $249,220.49 in attorney's fees and costs through trial of the indemnity claim is unreasonable as a matter of law in light of the amount recovered by United Medical ($74,037.11) for indemnification and the lack of "uniqueness" of the case.

■■■ Chapter 82 authorizes sellers like United Medical who are entitled to indemnity from a manufacturer also to recover from the manufacturer court costs and "reasonable attorney fees" incurred by the seller to enforce its right to indemnity. TEX. CIV. PRAC. & REM.CODE ANN. § 82.002(g). A reasonable fee is one that is moderate or fair but not excessive or extreme. *Garcia v. Gomez*, 319 S.W.3d 638, 642 (Tex.2010). A fee is incurred when a client becomes liable for it. *Id.* Ansell does not challenge that the fees sought were incurred, only the reasonableness of the fees. Generally, the determination of reasonable attorney's fees is a question of fact to be determined by the fact-finder. *Garcia v. Gomez*, 319 S.W.3d 638, 642 (Tex.2010) (quoting *Smith v. Patrick W.Y. Tam Trust*, 296 S.W.3d 545, 547 (Tex.2009), which in turn quotes *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex.1990)).

■■■ We will reverse a fact-finder's determination of the reasonableness of attorney's fees on the basis of a legal sufficiency challenge only if there is no evidence to support it. *See Redwine v. Wright*, No. 14–10–00030–CV, 2010 WL 5238572, at *2 (Tex.App.-Houston [14th Dist.] Dec. 16, 2010, no pet.); *Omne Staff Leasing Servs., Inc. v. Ellis Berkovsky*, No. 01–03–00710–CV, 2004 WL 585006, at *3 (Tex.App.-Houston [1st Dist.] Mar. 25, 2004, no pet.); *Robert Parker's Truck & Trailer Repair, Inc. v. Speer*, 722 S.W.2d 45, 48–49 (Tex.App.-Houston [1st Dist.] 1986, no writ); *cf. Midland W. Bldg. LLC. v. First Serv. Air Conditioning Contractors, Inc.*, 300 S.W.3d 738, 739 (Tex.2009) (holding controverted evidence of reasonable and necessary attorney's fees raised issue of fact for jury, but jury award of no fees was not supported by evidence because there was no evidence that no fees were incurred or that all fees incurred were of no value). Here, the trier of fact heard expert testimony that supported the reasonableness of the attorney's fees it awarded. United Medical's expert testified that he was familiar with the *Arthur Andersen* factors used to determine the reasonableness of attorney's fees and that he applied those considerations in determining the amount of fees reasonable and necessary for United Medical. *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex.1997).

Several of the *Arthur Andersen* factors weigh in favor of the attorney's fees award. The parties' indemnity dispute lasted over a considerable length of time and was hotly contested, with multiple voluminous motions filed by both sides. *See id.* (identifying as a factors for consideration: time and labor required, novelty and difficulty of questions involved, and skill required to perform legal services properly). The record demonstrates that a significant portion of the legal work performed by United Medical in prosecuting its indemnity claim was in response to motions filed by Ansell, some of which asked the trial court to reconsider or revisit issues already decided in United Medical's favor. Contrary to Ansell's contention that there were no "unique" issues in this case, Ansell presented a number of legal arguments related to the mechanics

of Chapter 82 indemnity in the context of multi-defendant products liability actions—an area of law not yet fully developed in the jurisprudence—which United Medical defended against. *See id.*

While the amount in controversy is less than the amount of attorney's fees incurred, United Medical obtained a good result, recovering most of the fees it sought. *See id.* (identifying as factors: amount in controversy and result obtained). Moreover, the record demonstrates that counsel for Ansell determined this indemnity action worthy of a rigorous defense, and there is no basis in the record for concluding that United Medical's counsel could not have reasonably reached the same conclusion. Finally, the expert testimony supports an inference that the rate charged by United Medical's counsel is consistent with the rate for services from other attorneys in the area with comparable experience, skill and ability. *See id.* (identifying as factors: experience, skill and ability of attorney and going-rate for similar services in local area).

There is more than a scintilla of evidence to support the trial court's assessment, as the trier of fact, of United Medical's reasonable attorney's fees. *See id.; see also John A. Broderick, Inc. v. Kaye Bassman Int'l Corp.,* 333 S.W.3d 895, 907–08 (Tex.App.-Dallas 2011, no pet.) (rejecting similar argument that attorney's fees were unreasonable as a matter of law in light of much smaller damages award).

**B.  Conditioning Appellate Attorney's Fees on Outcome**

Ansell's final argument is that the trial court's award of attorney's fees for appeal is erroneous because it requires Ansell to pay United Medical's attorney's fees (1) on appeal, regardless of which party prevails on appeal and (2) for a petition for review to the Supreme Court of Texas, regardless of which party files the petition. We agree that the award of appellate attorney's fees should be dependent on which party prevails on appeal. *Keith v. Keith,* 221 S.W.3d 156, 171 (Tex. App.-Houston [1st Dist.] 2006, no pet.); *Sipco Servs. Marine v. Wyatt Field Serv. Co.,* 857 S.W.2d 602, 607–08 (Tex.App.-Houston [1st Dist.] 1993, no writ). "However, an unconditional award of appellate attorney's fees does not require reversal; instead, we may modify a trial court's judgment to make the award of appellate attorney's fees contingent upon the receiving party's success on appeal." *Keith,* 221 S.W.3d at 171 (citing *Pao v. Brays Vill. E. Homeowners Ass'n,* 905 S.W.2d 35, 38–39 (Tex.App.-Houston [1st Dist.] 1995, no writ)); *Houston Livestock Show & Rodeo, Inc. v. Hamrick,* 125 S.W.3d 555, 586 (Tex. App.-Austin 2003, no pet.). We therefore modify sections 1(c)(ii)-(iv) of the trial court's judgment as follows:

c.  Reasonable attorney's fees incurred in the prosecution of this action as follows: ...

ii.  $30,000.00 in the event of an appeal to the court of appeals *unless Ansell prevails in the court of appeals and petition for review is not granted by the Texas Supreme Court or unless Ansell prevails in the Texas Supreme Court;*

iii.  $12,5000 in the event that *Ansell* files a petition for review in the Texas Supreme Court *unless Ansell prevails in the Texas Supreme Court;*

iv.  $15,000 in the event *Ansell's* petition for review is granted by the Texas Supreme Court *unless Ansell prevails in the Texas Supreme Court.*

(modified language italicized).

## Conclusion

We affirm the trial court's judgment as modified.