Opinion issued October 31, 2013.



**In The**

# Court of Appeals

**For The**

# First District of Texas

_____

**NO. 01-12-00847-CV**
_____

**NORTHERN AND WESTERN INSURANCE COMPANY LTD., Appellant**

**V.**

**SENTINEL INVESTMENT GROUP, LLC, Appellee**

**On Appeal from the 268th District Court**
**Fort Bend County, Texas**
**Trial Court Cause No. 11DCV190036**

**O P I N I O N**

Sentinel Investment Group, L.L.C., is a small investment group funded by four individuals. Lured by an investment program that promised regular payment of substantial profits and a guaranteed return of Sentinel's $1.5 million in

investment principal, Sentinel entered into a Private Placement Agreement (agreement) with Fundación Vamos Panama (FVP).  FVP procured a surety bond from Northern & Western as security for Sentinel's investment.

The investment program did not deliver as promised.  Only a few months into the program, Sentinel stopped receiving profit payments.  It learned that FVP had been dissolved, its offices were shuttered, and its principal had fled to another country.

Sentinel informed Northern & Western of FVP's failure to make profit payments or return its investment principal, and it demanded payment under the surety bond.  Northern & Western refused to pay Sentinel, and Sentinel sued it for breach of contract. Sentinel moved for summary judgment.  The trial court granted summary judgment and awarded Sentinel $1.5 million in damages and reasonable attorney's fees. Northern & Western moved for a new trial, which the trial court denied.

On appeal, Northern & Western contends that the trial court erred in: (1) granting summary judgment on Sentinel's breach-of-contract claim; (2) awarding Sentinel $1.5 million in damages; and (3) awarding Sentinel appellate attorney's fees without conditioning the award on a successful appeal. We modify

2

the judgment to condition the award of appellate attorney's fees on a successful appeal and, as modified, affirm.

## Background

In October 2010, Sentinel entered into the agreement with FVP, a Panamanian corporation with offices in Panama. Pursuant to the agreement, Sentinel deposited investment principal of $1.5 million into FVP's Swiss bank account. FVP agreed to invest these funds on behalf of Sentinel and to pay Sentinel seventy percent of future profits in twice-monthly installments. FVP would retain the remaining thirty percent future profits and, after a forty-week term—the duration of the investment program—return to Sentinel its $1.5 million principal amount. The agreement further provided that, if FVP missed one of the twice-monthly profit payments, the "principal amount will be returned [to Sentinel]."

On the same day FVP entered into the agreement with Sentinel, FVP and Northern & Western Insurance Company, Ltd. (Northern & Western) executed a surety bond contract. The surety bond reflects that, in exchange for FVP's payment of $75,000.00, Northern & Western agreed to insure Sentinel against loss of the $1.5 million principal investment "in the event of a breach of the [agreement] by FVP and/or any default of FVP in the performance of its obligations under the [agreement] . . . [Northern & Western] shall, subject to the

3

provisions of this bond and to the extent that the Deposit Amount is not returned to Sentinel in accordance with the [agreement], discharge to Sentinel any differential between the Deposit Amount and those monies returned to Sentinel relating to such deposit in accordance with the Contract, up to [the $1.5 million] maximum of the Bond Amount."

Sentinel transferred $1.5 million into FVP's Swiss bank account on October 5, 2010. Sentinel received its first payment from FVP on November 1, 2010. Alarmed that the amount was substantially less than FVP had represented Sentinel would receive, Sentinel sent FVP an email complaining about the discrepancy and requesting return of the $1.5 million investment. Sentinel reiterated its demand for return of the investment principal in correspondence sent on November 10 and December 16. In all, Sentinel received four profit distributions from FVP, on November 1, 2010, November 17, 2010, December 1, 2010, and December 17, 2010. Like the first distribution, the later ones were substantially less than the amount Sentinel understood the investment would earn. FVP did not return Sentinel's investment principal.

In correspondence dated February 11, 2011, Sentinel notified Northern & Western of its beneficiary status under the surety bond and claimed $1.5 million under the bond based on a missed payment due on February 1, 2011, the

4

previously missed payments, and FVP's failure to respond to Sentinel's demand for the return of its investment principal.

In April 2011, Northern & Western conducted a "financial fraud investigation" into FVP. The investigation revealed that FVP had closed its offices in Panama in November 2010, the corporation had been dissolved in early December 2010, and its principal had fled the country. In a May 2011 letter to Sentinel, Northern & Western claimed that FVP had procured the surety bond by committing fraud and, as a result, the bond was invalid ab initio.

## Discussion

### I.    Standard of Review

The challenged judgment grants Sentinel's traditional motion for summary judgment on its breach-of-contract claim. We review de novo the trial court's ruling on a motion for summary judgment. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). We take as true all evidence favorable to the non-movant, and we indulge every reasonable inference in the nonmovant's favor. *Dorsett*, 164 S.W.3d at 661; *Provident Life & Accid. Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). Under Texas Rule of Civil Procedure 166a(c), the party moving for summary judgment bears the burden of showing that no genuine

5

issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Knott*, 128 S.W.3d at 215–16.

## II.    Rights and Duties Under the Surety Bond

"A surety is a party who promises to answer for the debt of another." *Crimmins v. Lowry*, 691 S.W.2d 582, 585 (Tex. 1985); *Simmons v. Compania Financiera Libano*, 830 S.W.2d 789, 792 (Tex. App.—Houston [1st Dist.] 1992, writ denied).  Surety bonds provide security for a creditor against an insolvent or otherwise unreliable principal. *See Am. Mfg. Mut. Ins. Co. v. Tison Hog Mkt.*, 182 F.3d 1284, 1288–89 (11th Cir. 1999).

We apply common-law contract principles to interpret surety bonds and determine a surety's liability. *Kendziorski v. Saunders*, 191 S.W.3d 395, 403 (Tex. App.—Austin 2006, no pet.); *see also Geters v. Eagle Ins. Co.*, 834 S.W.2d 49, 50 (Tex. 1992) ("The liability of a surety is determined by the language of the bond itself.").  The construction of a surety bond is a question of law for the court. *Augusta Ct. Co-Owners' Ass'n v. Levin, Roth & Kasner, P.C.*, 971 S.W.2d 119, 123 (Tex. App.—Houston [14th Dist.] 1998, pet. denied) (citing *G.H. Bass Co. v. Dalsan Props.—Abilene*, 885 S.W.2d 572, 576 (Tex. App.—Dallas 1994, no writ)).

To be enforceable, a surety bond, like any contract, must use sufficiently certain language to enable a court to determine the rights and responsibilities of the

parties. *See T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992). Our primary concern in construing a written contract is to ascertain the true intent of the parties as expressed in the instrument. *Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006); *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005). We consider the entire writing in an effort to harmonize and give effect to all of the provisions of the contract so that none will be rendered meaningless. *Seagull Energy E & P, Inc.*, 207 S.W.3d at 345. Contract terms will be given their plain, ordinary, and generally accepted meanings unless the contract indicates a technical or different sense. *Dorsett*, 164 S.W.3d at 662.

"If a contract as written can be given a clear and definite legal meaning, then it is not ambiguous as a matter of law." *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 133 (2010); *see SAS Inst., Inc. v. Breitenfeld*, 167 S.W.3d 840, 841 (Tex. 2005). A contract is ambiguous only if it is subject to two or more reasonable interpretations. *Seagull Energy E & P, Inc.*, 207 S.W.3d at 345; *Edascio, L.L.C. v. NextiraOne L.L.C.*, 264 S.W.3d 786, 796–97 (Tex. App.—Houston [1st Dist.] 2008, pet. denied). A lack of clarity does not create an ambiguity, and not every difference in the interpretation of a contract amounts to an ambiguity. *Gilbert Tex. Constr., L.P.*, 327 S.W.3d at 133. Courts should not

rewrite contracts to insert provisions that the parties could have included or imply restraints for which they have not bargained. *Tenneco, Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 646 (Tex. 1996); *see also Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 162 (Tex. 2003) ("[W]e may neither rewrite the parties' contract nor add to its language.").

To be entitled to summary judgment on its breach-of-contract claim, Sentinel was required to prove, as a matter of law, the essential elements of breach of contract: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of contract by the defendant; and (4) damages sustained as a result of the breach. *Simien v. Unifund CCR Partners*, 321 S.W.3d 235, 247 (Tex. App.—Houston [1st Dist.] 2010, no pet.); *Williams v. Unifund CCR Partners*, 264 S.W.3d 231, 235–36 (Tex. App.—Houston [1st Dist.] 2008, no pet.).

## A. Default

Northern & Western first contends that the trial court erred in determining that FVP defaulted on the parties' underlying contract. The default clause provides:

1. [FVP] agrees to return the principal sum of USD $1,500,000.00 back to [Sentinel] at the end of the duration of the Private Placement Program, which is a 40 week term.

8

2. The invested Principal will be returned to the investor unless a written request is issued requesting for an extension of the agreement.

3. Principal amount will be returned if at any point during the Private Placement Program a payment is missed, which will be Bi-Weekly.

The forty-week term ended before Sentinel moved for summary judgment. The parties do not dispute that FVP failed to return Sentinel's $1.5 million at the end of the forty-week term or contend that either party requested an extension of the agreement. Northern & Western nevertheless contends that a proper interpretation of the first sub-clause requires FVP to make profit payments only when the investment scheme had earned profits to distribute or, alternatively, that the sub-clause's meaning is ambiguous and therefore raises a fact issue. According to Northern & Western, Sentinel failed to conclusively establish that FVP breached the agreement because it did not show whether FVP's failure to pay profits in January resulted from an intentional withholding rather than simply a lack of profits to distribute. But the agreement provides for the return of principal "if at any point during [the program] a payment is missed" without regard for the reason, whether it be intentional or due to a lack of profit. FVP missed nearly all of the bi-monthly payments under the profit-sharing sub-clause. In any event, the passage of time has rendered the dispute concerning that provision moot, as the parties agreed

9

in the trial court that FVP did not comply with the requirement that it return the principal investment to Sentinel at the end of the forty-week term. [1]

## B.  Repudiation

Second, Northern & Western posits that Sentinel's correspondence to FVP demanding an immediate return of its investment principal constitutes a repudiation of the agreement that effectively discharged FVP from its remaining obligations under the agreement.  We disagree.  Having fully performed its obligations when it deposited the $1.5 million investment principal in FVP's Swiss bank account, Sentinel's demand was not a repudiation of its rights under the contract.  *See Chapman v. Olbrich*, 217 S.W.3d 482, 491 (Tex. App.—Houston [14th Dist.] 2006, no pet.) ("A party repudiates a contract if the party manifests, by words or actions, a definite and unconditional intention not to perform the contract according to its terms.").

Northern & Western also describes Sentinel's demands for a return of its principal as having invited FVP's nonperformance.  But Sentinel did not invite FVP to keep Sentinel's $1.5 investment principal, the default that triggered

---

[1]     During the hearing on the summary-judgment motion, the trial court asked Northern & Western's counsel "Did [the $1.5 million] get paid back in accordance with the agreement . . . . ?"  Northern & Western's counsel responded, "No, it didn't . . . ."

Northern & Western's obligations under the surety bond. Northern & Western agrees with Sentinel that FVP's investment scheme was a fraud; Sentinel cannot be faulted for trying to minimize its damages by demanding an early end to its participation.

**C. Breach**

Third, Northern & Western claims that Sentinel is not entitled to summary judgment because it did not breach its surety obligation and its liability is conditioned on FVP's breach or default on the underlying contract. But, as we have discussed, the summary-judgment record shows that FVP defaulted, and Northern & Western did not proffer any controverting evidence. Upon FVP's default, Sentinel notified Northern & Western of FVP's failure to return Sentinal's principal. Northern & Western's own investigation showed that FVP no longer existed in corporate form; its principal had fled from Panama. Northern & Western refused to pay Sentinel under the bond and initially denied the bond's validity.[2] We reject Northern & Western's contention that Sentinal failed to prove breach of the surety agreement.

---

[2]     Northern & Western does not revive this challenge on appeal.

11

**D.     Damages**

Fourth, Northern & Western challenges the trial court's award of $1.5 million in damages to Sentinel. Specifically, Northern & Western disputes the trial court's interpretation of the following provision of the surety bond that fixed the amount of damages due:

> [Northern & Western] guarantees to [Sentinel] that in the event of a breach of the [agreement] by [FVP] and/or any default of [FVP] in the performance of its obligations under the [agreement] . . ., [Northern & Western] shall, subject to the provisions of this bond and to the extent the Deposit Amount is not returned to [Sentinel] in accordance with the [agreement], discharge to [Sentinel] any differential between the Deposit Amount and those monies returned to [Sentinel] relating to such a deposit . . . up to a maximum of the Bond Amount."

Northern & Western urges us to construe "monies . . . relating to such a deposit" as requiring the trial court to calculate the principal amount net of an offset for the profit distributions made to Sentinel in October and November 2010. That construction, however, fails to account for the provision's use of "Deposit Amount" returned in reference to the "monies;" the distributions were neither "deposit" amounts, nor were they "monies returned" that related "to such a deposit." The underlying agreement assured by the bond required that FVP return to Sentinel its entire $1.5 million in investment principal, regardless of program payments made. The plain language of the surety bond unambiguously expresses

12

the parties' intent to safeguard Sentinel's principal investment and fixes the maximum due to Sentinel at that amount. The trial court did not err in rejecting Northern & Western's request for an offset, because neither the underlying agreement nor the surety contract supports an amount owed net of profit distributions.

## III.    Appellate Attorney's Fees

Finally, Northern & Western challenges the language in the judgment awarding Sentinel its appellate attorney's fees, which states: It is "ORDERED . . . that plaintiff Sentinel recover additional attorney's fees in the amount of $50,000.00 (Fifty Thousand Dollars) in the event of an appeal." Northern & Western contends that this language should be deleted from the judgment because it improperly awards Sentinel its attorney's fees without conditioning their recovery on a successful appeal. We agree that the award of appellate attorney's fees should be dependent on which party prevails on appeal. *Ansell Healthcare Prods., Inc. v. U. Med.*, 355 S.W.3d 736, 745 (Tex. App.—Houston [1st Dist.] 2011, pet. denied); *Hoefker v. Elgohary*, 248 S.W.3d 326, 332 (Tex. App.—Houston [1st Dist.] 2007, no pet.). An unconditional award of appellate attorney's fees, however, does not require reversal; instead, we may modify a trial court's judgment to make the award of appellate attorney's fees contingent upon the

13

receiving party's success on appeal. *Ansell*, 255 S.W.3d at 745; *Hoefker*, 248 S.W.3d at 332. We therefore modify the trial court's judgment to condition the award of appellate attorney's fees on a successful appeal.

## Conclusion

We hold that the trial court did not err in awarding Sentinel $1.5 million in damages for Northern & Western's breach of the surety bond. We modify the trial court's judgment to replace the current provision awarding appellate attorney's fees to condition them on a successful appeal. As modified, we affirm the judgment of the trial court.

Jane Bland
Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.