**Reversed and Rendered in part; Affirmed in part and Opinion Filed August 25, 2022**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

_____

**No. 05-20-00834-CV**
_____

**LIZA WILDMAN, INDIVIDUALLY AND AS TRUSTEE OF THE SPRINGMAN–WILDMAN TRUST, Appellant**

**V.**

**ANNETTE PATRIZI & ERIC PATRIZI, Appellees**

**On Appeal from the 219th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 219-02529-2018**

## MEMORANDUM OPINION

Before Justices Myers, Osborne, and Nowell
Opinion by Justice Myers

Liza Wildman, individually and as trustee of the Springman–Wildman Trust, appeals the judgment in favor of Annette Patrizi and Eric Patrizi. Wildman brings eight issues[1] on appeal contending the trial court erred by (1) subjecting Wildman individually to liability for breach of an easement agreement to which she was not a party in her individual capacity; (2) rendering judgment against Wildman as trustee

---

[1] Wildman identifies her eight issues as "A" through "H." We use the corresponding numbers "1" through "8" to refer to them.

when she had not been served in that capacity and had not appeared in the lawsuit in that capacity; (3) granting the Patrizis' motion for summary judgment on Wildman's affirmative defenses; (4) granting the Patrizis' motion to strike Wildman's counterclaim; (5) and (6) granting the Patrizis' motion for summary judgment on Wildman's liability; (7) granting the Patrizis injunctive relief beyond what was requested in their pleadings and beyond what was supported by the evidence; and (8) awarding the Patrizis attorney's fees of $106,947.50.

We reverse the trial court's granting the no-evidence motion for summary judgment against Wildman in her individual capacity on the defense that she is not liable in that capacity, and we render judgment that the Patrizis take nothing from Wildman on their claims against her individually. We modify the judgment by striking paragraphs ten, eleven, and twelve of the injunctive relief. We also modify the judgment to provide that the award of appellate attorney's fees is conditioned on the Patrizis prevailing on appeal. We affirm the trial court's judgment in all other respects.

## BACKGROUND

Anna Lakes Estates is in an unincorporated area of Collin County near the City of Anna. It appears from the record the area was a 72-acre tract owned by Virginia Rhea that she subdivided into multiple lots. The lots ran to the west from Red Fox Road (a road running north and south on the east side of the lots), and the lots faced north or south. Her subdivision of the lots did not expressly include a road

for access to the lots. The residents used the land running east and west between the houses as a roadway to access their lots.

At some point, the residents sought to formalize their use of the property between the lots as an access roadway for their properties. They signed an easement agreement in which each property owner gave an easement to the other property owners of the property between the lots they all used to access their properties. Effective December 1, 1996, the owners signed an amended easement agreement, which included a metes-and-bounds description of the property subject to the easement. They also formed a homeowners' association for the care and maintenance of the property subject to the easement, which they called Rabbit Run Road. The road was unpaved, and the homeowners' association kept it covered with gravel. The area covered by the easement did not extend to the western end of the properties.

Wildman and the Patrizis live opposite one another at the western end of the easement area; Wildman lives on the south side of the easement area and the Patrizis live on the north side. They each have circular driveways connecting their residences to the easement area. The western boundary of the area covered by the easement agreement is just west of where their circular driveways connect to the roadway. Both of their properties extend to the west beyond the easement area. The roadway appears to continue on between their properties west of the area subject to the easement agreement.

The Patrizis testified that all the property west of the easement area and north of Wildman's fence line belonged to them. They testified that they paid to have the grassland west of the easement area converted into a private drive to reach the shop building on their property west of the easement area.

Wildman, who lives on the south side of the easement area, testified that her property west of the easement area extended north of her fence line to halfway across the roadway west of the easement area. Wildman testified that she maintained her side of the property to the west of the easement area.

In 2018, Wildman began operating a kennel for rescued dogs, and she built the kennel on her property west of the easement area. She testified that from the time she moved there in 2008 until 2018, she used the land to the west of the easement area to access the western part of her property as she was building and beginning to operate the kennel.

Wildman's circular driveway that connects to the easement area had gates on each end. After she began operating the kennel, she kept the gates closed to prevent the dogs and other animals from escaping her property. Because she usually kept the gates closed, people coming to her property had to park either in the easement area or partially in her driveway and partially in the easement area.

A dispute arose between the Patrizis and Wildman concerning the use of the easement area. According to the Patrizis, the easement area could only be used for the purposes set out in the easement agreement: "ingress, egress, passage and

delivery by vehicles and pedestrians." They maintained the easement area could not be used for parking, even if the vehicles were pulled over to the side of the easement area leaving room for vehicles to pass in the middle of the roadway. Wildman asserted the easement area could be used for her and her customers and guests to park on the grassy verge along the side of the easement area and not in the part of the roadway covered with gravel. Wildman spray painted the words "Community Parking" on the grass in the easement area.

The Patrizis and Wildman also disagreed about the property to the west of the easement area. The Patrizis maintained they owned all the property north of Wildman's fence line and due west of the easement area. They testified that they paid to have the grassland west of the easement area converted into a private drive to reach the shop building they built on their property west of the easement area. Wildman maintained her and the Patrizis' properties extended to the middle of the area west of the easement area. The Patrizis disagreed with her and built a fence with a gate running north and south just west of the easement area. The fence blocked Wildman from using the property west of the easement area to access the western portion of her property where her kennel was located. The Patrizis testified Wildman would park a vehicle in front of the gate in the fence, which blocked them from using the property west of the easement area to access their shop building to the west of the easement area. Wildman also knocked down the fence with a tractor.

In 2018, shortly after Wildman began operating the kennel, the Patrizis sued Wildman alleging she violated the easement agreement because she parked and instructed her guests and invitees to park in the easement area. The Patrizis alleged Wildman intentionally blocked appellees' access to their property and refused to remove her vehicle that blocked their access. The Patrizis sought injunctive relief to stop Wildman from breaching the easement agreement, damages, and attorney's fees. Wildman filed an answer asserting several affirmative defenses. She also filed a counterclaim seeking injunctive relief including an order that the Patrizis remove the fence at the western end of the easement area. The trial court granted the Patrizis' requests for a temporary restraining order and, after a hearing, granted the Patrizis a temporary injunction prohibiting Wildman and her guests and invitees from parking in the easement area, from making any use of the easement area other than the uses expressly allowed by the easement agreement, and from blocking any gates or access to the Patrizis' property. The trial court denied Wildman's request for a temporary injunction.

The Patrizis filed a no-evidence motion for summary judgment on Wildman's affirmative defenses; Wildman filed a response to the motion. After the Patrizis' no-evidence motion for summary judgment was submitted to the trial court, Wildman filed a traditional motion for summary judgment on some of her defenses; the Patrizis filed a response to her motion. The trial court granted the Patrizis' no-evidence motion for summary judgment on all but two of the affirmative

defenses, limitations and waiver and abandonment, and denied Wildman's traditional motion for summary judgment on the defenses.

The Patrizis then filed a traditional motion for summary judgment on their breach-of-contract claim.

After the Patrizis filed their traditional motion for summary judgment on Wildman's liability on their breach-of-contract claim, Wildman filed a "Second Amended Counter Petition." This pleading omitted the causes of action in her first amended counterclaim and instead alleged a breach-of-contract cause of action against the Patrizis that mirrored their breach-of-contract claim against her.

The trial court granted the Patrizis' motion for summary judgment on Wildman's liability and rendered judgment against Wildman. The judgment included a permanent injunction against Wildman and an order that Wildman pay the Patrizis attorney's fees of $106,947.50.

The Patrizis then moved to strike Wildman's second amended counter petition, which the trial court granted.

## COMPETING MOTIONS FOR SUMMARY JUDGMENT ON WILDMAN'S AFFIRMATIVE DEFENSES

In her first three issues, Wildman contends the trial court erred by granting the Patrizis' no-evidence motion for summary judgment and by denying her traditional motion for summary judgment on her affirmative defenses.

We review a no-evidence summary judgment under the same legal sufficiency standard used to review a directed verdict. *See* TEX. R. CIV. P. 166a(i); *Flood v.*

*Katz*, 294 S.W.3d 756, 762 (Tex. App.—Dallas 2009, pet. denied). We must determine whether the nonmovant produced more than a scintilla of probative evidence to raise a fact issue on the material questions presented. *See id.* When analyzing a no-evidence summary judgment, we consider all the evidence in the light most favorable to the nonmovant, we indulge every reasonable inference, and we resolve any doubts against the movant. *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006) (quoting *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005)). A no-evidence summary judgment is improperly granted if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). "More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable, fair-minded persons to differ in their conclusions." *Id.* (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *Id.* (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)).

In a traditional summary judgment, the movant has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). In deciding whether a disputed material fact issue exists precluding summary judgment, evidence favorable to the nonmovant will be taken as true. *In re Estate of Berry*, 280 S.W.3d 478, 480 (Tex. App.—Dallas 2009,

–8–

no pet.). Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *City of Keller*, 168 S.W.3d at 824.

We review a summary judgment de novo to determine whether a party's right to prevail is established as a matter of law. *Sandberg v. STMicroelectronics, Inc.*, 600 S.W.3d 511, 521 (Tex. App.—Dallas 2020, pet. denied).

When both parties move for summary judgment on the same issue, and the trial court denies one motion but grants the other, we review both motions and responses, we consider the evidence presented by both parties, we determine all questions presented, and we render the judgment the trial court should have rendered. *Nettye Engler Energy, LP v. BlueStone Nat. Res. II, LLC*, 639 S.W.3d 682, 689 (Tex. 2022); *Barbara Techs. Corp. v. State Farm Lloyds*, 589 S.W.3d 806, 811 (Tex. 2019).

## Liability in the Capacity Served

In her first issue, Wildman contends the trial court erred by granting the Patrizis' no-evidence motion for summary judgment and denying her traditional motion for summary judgment on her defense that she cannot be liable under the easement agreement because she does not own the property in her individual capacity but only as trustee of the Springman–Wildman Trust. In her second issue, Wildman contends she is not liable in her capacity as trustee of the Springman–Wildman Trust because she was not served with process and did not appear in the lawsuit in that capacity.

The Patrizis filed suit against Wildman in May 2018 alleging she was "an individual residing at 1404 Rabbit Run Road." The next month, Wildman filed a counterclaim. She did not expressly identify the capacity in which she brought the counterclaim but identified herself only as "LIZA WILDMAN, hereinafter referred to as Counter-Plaintiff." The "Factual Background" portion of the counterclaim described how the property was purchased by her husband, Donald Springman, in 2008 and then conveyed by him in 2018 "to Donald C. Springman and Liza J. Wildman, Co-Trustees of the Springman–Wildman Revocable Trust." Wildman described herself as "the owner" of the property. The counterclaim alleged causes of action against the Patrizis for trespass by constructing the fence at the western end of the easement area that extended onto her property, easement by prescription alleging that the property west of the easement area was subject to an easement for Wildman to access the western portions of her property, a request for declaratory judgment that Rabbit Run Road to the west of the easement area was a public road, and a request for injunctive relief requiring the Patrizis to remove the fence and gate and to prohibit their building other obstructions that would interfere with Wildman's possession of her land or use of the roadway.

Wildman amended her counterclaim on July 5, 2018, removing allegations that the Patrizis' petition was misleading and adding allegations that the Patrizis added landscaping in the easement area. Her causes of action were identical to her original counterclaim except she omitted the request for a declaration that Rabbit

Run Road was a public roadway, and she added to her request for injunctive relief that the Patrizis be barred from "using the easement for the maintenance of landscaping directly across the easement from Counter-Plaintiff's driveways." Her counterclaim alleged that the easement agreement permitted the easement area to be used only "for the purpose of ingress, egress, passage and delivery by vehicles and pedestrians."

On December 19, 2018, Wildman filed her second amended answer to the Patrizis' suit. For the first time, she alleged she "denies that she is liable in the capacity in which she has been sued" because she was not the owner of the property subject to the easement agreement.

The Patrizis amended their petition in February 2019 to allege the defendant was Wildman, "individually and as Trustee of the Springman–Wildman Revocable Trust." The Patrizis did not have Wildman served with process in her capacity as trustee. The next month, March 2019, the Patrizis moved for no-evidence summary judgment on Wildman's affirmative defenses, including her defense that she was not liable in the capacity in which she was sued. Wildman did not present evidence in her response to the Patrizis' no-evidence motion for summary judgment that she did not own the property in her individual capacity. The trial court took the no-evidence motion for summary judgment under advisement on March 29, 2019.

On April 18, 2019, twenty days after the trial court took the no-evidence motion for summary judgment under consideration, Wildman filed a traditional

–11–

motion for summary judgment on several of her affirmative defenses, including her assertion that she did not own the property in her individual capacity. She attached to this motion her affidavit explaining the transfer of the property and the deed showing the transfer of the property from her now-deceased husband, Donald Springman, to him and her as "Co-Trustees of the Springman–Wildman Revocable Trust."

In her motion for summary judgment, Wildman attached as an exhibit the deed transferring title to the property from Donald Springman to Springman and Wildman as trustees. Wildman also testified in her affidavit attached to her motion for summary judgment:

> I moved to Anna Lakes Estates in 2008 with Don Springman. Don Springman and I were not married at the time Don Springman purchased 1404 Rabbit Run Road, Anna, Texas. I have resided at 1404 Rabbit Run Road since the time Don and I moved there. We were married several years after we moved to 1404 Rabbit Run Road. The property at 1404 Rabbit Run Road, Anna, Texas has never been in my name. It was in Don Springman's name when he purchased it and upon his death it was transferred to the Springman Wildman Trust. I am a tenant and occupant of the property under the permission of the Trust.

Although these documents were not included in Wildman's response to the Patrizis' no-evidence motion for summary judgment, we must consider them with that motion because the evidence was part of Wildman's motion for summary judgment on the same issue that was decided by the trial court at the same time. *Barbara Techs. Corp.*, 589 S.W.3d at 811 ("When both parties move for summary judgment on the same issue, the reviewing court considers the evidence presented by both parties,

–12–

determining all questions presented."). Wildman's testimony and the deed are conclusive evidence that she does not own the property in her individual capacity. Therefore, the trial court erred by granting the Patrizi's no-evidence motion for summary judgment and denying Wildman's traditional motion for summary judgment as to that affirmative defense. We sustain Wildman's first issue.

We next consider Wildman's contention that the trial court could not render judgment against her in her capacity as trustee because she was not served and did not appear in that capacity. An order is void when a court has no power or jurisdiction to rule on it. *Urbish v. 127th Jud. Dist. Ct.*, 708 S.W.2d 429, 431 (Tex. 1986) (orig. proceeding). "It is axiomatic that a judgment must be supported by a proper showing of jurisdiction over the subject matter and over the relevant parties." *Velasco v. Ayala*, 312 S.W.3d 783, 797 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (citations omitted). A court obtains jurisdiction over a defendant through valid service of process or through the defendant's appearance. *Mapco, Inc. v. Carter*, 817 S.W.2d 686, 687 (Tex. 1991) (citing TEX. R. CIV. P. 124) ("In no case shall judgment be rendered against any defendant unless upon service, or acceptance or waiver of process, or upon an appearance."). "A party enters a general appearance when it (1) invokes the judgment of the court on any question other than the court's jurisdiction, (2) recognizes by its acts that an action is properly pending, or (3) seeks affirmative action from the court." *Exito Elecs. Co. v. Trejo,* 142 S.W.3d 302, 304–05 (Tex. 2004) (per curiam). A general appearance indicates that the party

–13–

submits to the court's jurisdiction and waives any complaint about service of process. *In re D.M.B.*, 467 S.W.3d 100, 103 (Tex. App.—San Antonio 2015, pet. denied).

Wildman's original and first amended counterclaims did not expressly allege the capacity in which she appeared. These counterclaims set out the facts of the transfer of the property from Springman individually to Springman and Wildman as trustees. Wildman alleged she was the owner of the property, and she alleged causes of action for trespass on the property, which she could only allege as an owner of an interest in the property. *See Gleason v. Taub*, 180 S.W.3d 711, 714 (Tex. App.—Fort Worth 2005, pet. denied). Her first amended counterclaim alleged the Patrizis violated the easement agreement by planting landscaping in the easement, and she requested injunctive relief pursuant to the easement agreement. As Wildman states, only an owner of property was subject to the burdens and benefits of the easement agreement, including the right provided by the easement agreement to seek injunctive relief without proving inadequacy of legal remedies or irreparable harm. Wildman's petition had to have been brought in her capacity as trustee because only in that capacity could she have brought the trespass cause of action and the suit for injunctive relief. *See Lighting Oil Co. v. Anadarko E & P Onshore LLC*, 480 S.W.3d 628, 633 (Tex. App.—San Antonio 2015) ("The plaintiff alleging trespass must show it owned or otherwise had a legal right to exclude others from the property."), *aff'd*, 520 S.W.3d 39 (Tex. 2017). By filing her counterclaim in what could only

have been her capacity as trustee, Wildman as trustee sought affirmative action from the court. Therefore, she voluntarily appeared in the lawsuit in her capacity as trustee and waived the Patrizis' failure to serve her in that capacity. We overrule Wildman's second issue.

## Affirmative Defenses

In her third issue, Wildman contends the trial court erred by granting the Patrizis' no-evidence motion for summary judgment on Wildman's affirmative defenses of laches, prior breach by the Patrizis, the Patrizis' lack of standing, failure of conditions precedent, and quasi estoppel.

### *Laches*

Wildman contends the trial court erred by granting no-evidence summary judgment on her affirmative defense of laches. The defense consists of three interrelated elements that the party asserting the defense must prove: (1) an unreasonable delay in asserting a right or claim; (2) that is not excused; and (3) that results in undue prejudice to the defendant. *Condom Sense, Inc. v. Alshalabi*, 390 S.W.3d 734, 758 (Tex. App.—Dallas 2012, no pet.). The defendant must show the plaintiff's delay was unreasonable in the face of the defendant's actions. *Dempsey v. Apache Shores Prop. Owners Ass'n, Inc.*, 737 S.W.2d 589, 596 (Tex. App.—Austin 1987, no pet.).

Wildman argues she presented some evidence of laches because she showed people had parked in the easement since at least 2009, the Patrizis had allowed their

–15–

guests and workmen to park in the easement, and "it had been common practice then and until this day for people to park in the easement." Wildman testified she "spent significant amounts of money to build a fence on my property and get our dog kennel constructed, permitted, and running. Had the Patrizis made their complaints known previously, I would not have had to incur additional expenses to move my fence and we could have avoided conflict with the Patrizis." Wildman's evidence does not demonstrate why any delay by the Patrizis in filing suit was unreasonable based on *her* actions. The fact that other people parked in the easement without the Patrizis bringing suit is not evidence of unreasonable delay by the Patrizis in the face of actions by Wildman. *See id.* (fact that other person installed mobile home in subdivision was irrelevant to laches defense by defendant wanting to install mobile homes in subdivision). Accordingly, we conclude the trial court did not err by granting the Patrizis' no-evidence motion for summary judgment on Wildman's laches defense.

### *Prior Material Breach*

Wildman argues the trial court erred by granting the Patrizis' no-evidence motion for summary judgment on her affirmative defense that the Patrizis committed a prior material breach of the easement agreement.

Wildman testified in her affidavit, "A little over a year ago they [the Patrizis] installed permanent fixtures in the easement next to their home. They installed a permanent sign and multiple bushes as well as small plastic fencing. . . . They have

–16–

also allowed their guests and workmen to park in [the] easement." Wildman attached to her affidavit a photograph of a roadway, presumably the easement area, with a gravel center and grassy sides. Along the grassy area on the left side of the roadway are what appear to be small plants with small barriers in front of each of them. The plants and barriers appear to be spaced at least several feet apart. In her response to the Patrizis' no-evidence motion for summary judgment, Wildman described the barriers as "temporary fencing in front of the shrubbery."

The easement agreement provides that the "Grantee Owner," which is each of the owners whose property is included in the easement area, has the responsibility for "[i]mprovement and maintenance of the easement." The Patrizis are "Grantee Owner[s]." Wildman does not explain how the planting of bushes along the edge of the easement area breached the agreement when the agreement permits "[i]mprovement." Wildman did not provide any photographic or descriptive evidence of the "permanent sign," nor does she explain how the Patrizis' installation of the sign violated the easement agreement.

As for Wildman's testimony that the Patrizis "have allowed their guests and workmen to park in the easement," Wildman presented no evidence that occurred before Wildman allowed her guests and invitees to park in the easement. Therefore, Wildman did not present evidence of the "prior" element of the defense of prior material breach.

We conclude the trial court did not err by granting the Patrizis' motion for summary judgment on the defense of prior material breach.

*Standing*

Wildman contends, "Because the Patrizis only hold a dominant estate in the easement, the trial court erred in rendering judgment for alleged violations the Patrizis lacked standing to pursue." Wildman argues that the Patrizis, as dominant easement holders, had "standing" to bring suit only for violations of the easement that interfered with their rights of "ingress, egress, passage and delivery by vehicles and pedestrians." Wildman argues the Patrizis had no standing to enforce other violations of the easement agreement. Wildman argues the Patrizis lacked standing because they failed to prove their rights of ingress, egress, and delivery were violated because they testified their driveways were never blocked by Wildman and her guests and invitees. However, the Patrizis testified that Wildman's guests and invitees blocked the road and that they had to ask people to move their vehicles "so we could access our property." The fact that vehicles were not blocking the Patrizis' driveways does not mean vehicles parked in the easement area did not otherwise block the Patrizis' access to their property.

Wildman argues the Patrizis lacked "standing" to bring their claim for breach of the easement because they have a dominant interest, and not a servient interest, in the easement. "A plaintiff has *standing* when it is personally aggrieved, regardless of whether it is acting with legal authority . . . ." *Pike v. Tex. EMC Mgmt. LLC*, 610

–18–

S.W.3d 763, 775 (Tex. 2020). In this case, the Patrizis presented evidence that they were "personally aggrieved" when they testified that their access to their property was blocked by vehicles stopped in the easement area. Therefore, the Patrizis had standing.

Wildman also argues the Patrizis had no "standing" to assert any other violations because the easement agreement gives the authority to enforce the agreement to the "Grantee Owner" and that the owners delegated their authority to the Anna Lake Estates Property Owners' Association. As discussed above, the Patrizis had standing because they were aggrieved. Additionally, Wildman's argument as we understand it, is that the Patrizis lack authority to bring suit for breaches of the easement agreement that do not bar their access to their driveway because the easement agreement provided, "Improvement and maintenance of the easement shall be at the sole expense of the Grantee Owner *and Grantee Owner shall have collectively the right to eliminate any encroachments into the easement*." (emphasis added) The owners provided for their collective action by creating the Anna Lake Estates Property Owners' Association as part of the road-maintenance agreement. The road-maintenance agreement states, "The Association shall have the right and power to provide for the maintenance, repair and replacement of the roadway, the front entrance, and all other matters pertaining to the roadway including, but not limited to, lighting, fire hydrants and public utilities." Wildman

–19–

argues that enforcement of the easement agreement is part of the "all other matters pertaining to the roadway."

The easement agreement does not purport to give the collective Grantee Owners exclusive authority to eliminate encroachments. The fact that the easement agreement expressly authorizes the "Grantee Owner" acting collectively to eliminate encroachments does not mean a single Grantee Owner lacks authority to seek enforcement of the agreement. Furthermore, section 2.07 of the easement agreement provides for enforcement of the easement agreement: "In the event of any interference or threatened interference with the easement, such easement may be enforced by restraining orders and injunctions (temporary or permanent) prohibiting such interference and commanding compliance hereof . . . ." This provision does not limit who can bring the enforcement action.

We conclude the trial court did not err by granting the Patrizis' motion for summary judgment on Wildman's assertion that the Patrizis lacked standing.

*Conditions Precedent*

Wildman contends the trial court erred by granting the Patrizis' motion for summary judgment on the ground that Wildman had no evidence that the Patrizis had not satisfied all conditions precedent to recovery. Wildman pleaded, "The Patrizis failed to perform all conditions precedent by failing to make demand for performance under the subject easement agreement." The Patrizis' petition sought attorney's fees for breach of contract under section 38.001 of the Civil Practice and

–20–

Remedies Code. TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(b)(8). Wildman argues that one of the conditions precedent to the Patrizis' recovery of attorney's fees under section 38.001 was that they had presented the claim to Wildman. *See id.* § 38.002. Wildman stated in her response to the motion for summary judgment: "While the Patrizis have made demand that Liza Wildman not permit parking in the easement agreement [sic], they have not made demand that Liza Wildman or her guests discontinue **blocking** them from getting to or from their residence." We disagree. A demand that Wildman not permit parking in the easement necessarily included a demand that she not permit parking in the easement that would block the Patrizis' access to their property.

We conclude the trial court did not err by granting the Patrizis' motion for summary judgment on the Patrizis' failure to meet conditions precedent.

### *Quasi-Estoppel*

Wildman contends the trial court erred by granting the Patrizis' motion for summary judgment on her defense of quasi-estoppel. "Quasi-estoppel precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken. The doctrine applies when it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit." *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex. 2000).

On appeal, Wildman argues she presented evidence of this defense because she showed she had used the easement area for parking without objection since 2009, the Patrizis "installed permanent landscaping and fixtures in the easement," and Wildman expended considerable sums building a new fence and kennel which she would not have done had she known the Patrizis intended to prevent her from using the easement area for pickup and deliveries of dogs and supplies for the kennel. Her response to the Patrizis' motion for summary judgment, however, asserted only that the Patrizis were estopped from claiming a violation by Wildman because they had placed fixtures in the easement. As discussed above, Wildman failed to present evidence that those "fixtures," namely, the small plants, the small barriers in front of the plants, and the "permanent sign" were not permitted by the easement agreement. Because there is no evidence these installations breached the easement agreement, Wildman has no evidence that the Patrizis' breaches estopped them from asserting Wildman's breach of the easement agreement.

We conclude the trial court did not err by granting the Patrizis' no-evidence motion for summary judgment on the quasi-estoppel defense.

We conclude Wildman has not shown the trial court erred by granting the Patrizis' motion for summary judgment and denying her motion for summary judgment on her affirmative defenses other than her defense that she is not liable in her individual capacity. We sustain her third issue to the affirmative defense that

–22–

she is not liable in her individual capacity, and we overrule her third issue in all other regards.

## STRIKING WILDMAN'S COUNTER PETITION

In her fourth issue, Wildman contends the trial court erred by striking Wildman's "Second Amended Counter Petition."

Wildman's original and first amended "counterclaim[s]" alleged the Patrizis trespassed on her property by building the fence at the western end of the easement area. The counterclaims also sought declarations that Rabbit Run Road to the west of the easement area was a public road and that Wildman had an easement by estoppel or prescription to use the road. Wildman sought injunctive relief requiring the Patrizis to remove the fence from her property and to move the fence so that it did not interfere with her use of the property to the west of the easement area.

The trial court granted the Patrizis' no-evidence motion for summary judgment on Wildman's affirmative defenses on July 31, 2019. Those affirmative defenses included Wildman's assertion that the Patrizis had committed a prior breach of the easement agreement by their invitees' parking in the easement.

On October 4, 2019, about two months after the summary judgment on her affirmative defenses, Wildman filed her "Second Amended Counter Petition." The second amended counter petition did not allege the claims in the original and first amended "counterclaim[s]." Instead, the second amended counter petition alleged

the Patrizis breached the easement agreement and mirrored the Patrizis' petition against her:

> [The Patrizis'] invitees routinely park on the easement and do business with and for the [Patrizis]. It is as if they use the easement property as community parking. They and/or their invitees have intentionally parked on the easement, interfering with the Defendant's access to and from her property. The [Patrizis] have caused the Defendant to have to drive off the road in an effort to leave her property.

Wildman sought damages, injunctive relief, and attorney's fees.

The Patrizis moved to strike Wildman's second amended counterpetition on the ground that it was virtually identical to Wildman's affirmative defense of prior breach of contract. The Patrizis argued the breach-of-contract cause of action should be stricken because the trial court had already rendered a no-evidence summary judgment on the prior-breach-of-contract affirmative defense. The Patrizis said their argument was comparable to collateral estoppel because the facts sought to be litigated in the second amended counter petition were fully and fairly litigated in the summary judgment proceeding, those facts were essential to the summary judgment, and the parties were cast as adversaries in the summary judgment, citing *John G. & Marie Stella Kennedy Memorial Foundation v. Dewhurst*, 90 S.W.3d 268, 288 (Tex. 2002). The Patrizis also argued the second amended counter petition should be stricken because "Wildman has judicially admitted that she believes the easement agreement is not enforceable" and because Wildman had pleaded her identical use of the easement area "falls within the permissible purpose of the Agreement."

–24–

On appeal, Wildman argues the trial court erred by granting the motion to strike because the Patrizis did not show her filing the breach-of-contract cause of action caused them surprise, citing Rule of Civil Procedure 63. That rule provides:

> Parties may amend their pleadings . . . by filing such pleas with the clerk at such time as not to operate as a surprise to the opposite party; provided that any pleadings . . . offered for filing within seven days of the date of trial or thereafter . . . shall be filed only after leave of the judge is obtained, which leave shall be granted by the judge unless there is a showing that such filing will operate as a surprise to the opposite party.

TEX. R. CIV. P. 63. Wildman filed her second amended counter petition six days before the hearing on the Patrizis' second motion for summary judgment. Wildman moved for leave to file the amended pleading, and the trial court granted leave. She argues on appeal that the trial court abused its discretion by granting the motion to strike because the Patrizis did not show the second amended counter petition operated as a surprise to them. Her brief does not address whether the Patrizis' arguments about collateral estoppel and judicial admissions applied to her second amended counter petition.[2]

The Patrizis' motion to strike the second amended counter petition was not based on Rule 63; thus, Wildman's arguments concerning Rule 63 are not relevant. Because Wildman does not argue on appeal the propriety of the grounds the Patrizis

---

[2] Wildman filed a response in the trial court to the Patrizis' motion to strike in which she argued collateral estoppel did not apply because the no-evidence summary judgment on her affirmative defenses was not a prior action and that the statements the Patrizis relied on in her pleadings were not judicial admissions. Wildman does not make these arguments on appeal, so we do not consider them.

–25–

asserted in their motion to strike, she has not shown the trial court erred by granting the motion to strike. We overrule Wildman's fourth issue.

## SUMMARY JUDGMENT ON LIABILITY

In her fifth, sixth, and seventh issues, Wildman contends the trial court erred by granting the Patrizis' traditional motion for summary judgment asserting Wildman was liable for breaching the easement agreement and awarding injunctive relief.

### Material Interference

In her fifth issue, Wildman contends the Patrizis failed to prove conclusively they were entitled to enforce the easement agreement because they failed to prove Wildman materially interfered with their use of the easement area. The easement agreement states, "In the event of any interference or threatened interference with the easement, such easement may be enforced by restraining orders and injunctions (temporary or permanent) prohibiting such interference and commanding compliance hereof . . . ."

The Patrizis presented evidence that Wildman instructed people coming to her property to park in the easement area. Wildman posted on Facebook, "Park on my side . . . ," and "P[M] me for address and please park on my side of the dirt road because I have a neighbor with nothing better to do but complain."

Eric Patrizi testified about the cars parked in the road:

Q. Now, I understand that you're here today because at some point in time the people across the way from you or across the road began doing

other things with the easement than ingress, egress and passage; is that correct?

A. Yes, sir.

Q. Describe about when did that start and what happened.

A. It started within probably a year or two of us moving out there. We've had neighbors parking their cars on the road preventing our use of the road to get to the remainder of our property.

Q. What did you do about it? Did you ask them to stop?

A. We—I believe we did. I mean, I recall—I know at one point in time we have called the police once or twice or more to address that specific issue.

Q. Were you able to get any kind of redress from the police for that problem?

A. I know on one occasion they asked them to move their cars. They did, they complied and the problem died down considerably over the years up until recently.

Q. Up until recently you said? A. Yes.

Q. Okay. Then what happened recently?

A. A couple of years ago, for whatever reason, they quit using their driveways to park their vehicles. So they parked it past the entry to their driveway which is basically the vehicles are half on their driveway and half on the easement. Generally it wasn't too much of a problem, but occasionally they've got a third vehicle or any guests that would come by would park in the road or the easement. Then here recently in the last few months when the business opened up we had people daily parking in the road.

Q. Are there sometimes several cars lined up on the road?

A. Yes, sir.

He also testified that Wildman's guests and invitees parked at the western end of the easement and sometimes on the Patrizis' property west of the easement, which

–27–

blocked the Patrizis from accessing their property west of the easement. He testified he had an attorney draft a letter to Wildman asking her to stop misusing the easement. The Patrizis later found the letter in their mailbox, torn into pieces, with the words: "this is not your property and bully someone else, trailer trash" written on it. Wildman denied writing the message on the letter and denied putting it in the Patrizis' mailbox. Eric Patrizi testified that since May 25, 2018, when Wildman was served with a restraining order prohibiting her from parking on the road, she had "consistently continued to have her customers and invitees park on the road." Annette Patrizi testified she brought this lawsuit because "when we tried to access parts of our property we were having to ask for cars to move so we could access the property."

Wildman testified that before the fence was built across the western side of the easement area, her customers did not park in the middle of the road or in a manner that obstructed the road. She also testified about the pictures the Patrizis' offered into evidence showing cars parked in the easement area. She testified the parked cars did not block the road. She also testified she did not park in front of the gate in the fence at the western end of Rabbit Run Road; she testified that when the Patrizis took the picture showing her truck in front of the gate, the truck was not parked but was being driven past the gate.

The evidence shows Wildman interfered with the easement area. Although she testified her invitees and guests did not block the road before the fence was built,

–28–

no evidence shows the road was not blocked or sometimes interfered with by people parking in the easement area after the Patrizis erected the fence.

Wildman also points to Eric Patrizi's testimony that the Patrizis' driveways were never blocked by Wildman or her guests and invitees. However, the Patrizis testified that Wildman's guests and invitees blocked the road and that they had to ask people to move their vehicles "so we could access our property." The fact that vehicles were not blocking the Patrizis' driveways does not mean vehicles parked in the easement area did not otherwise block the Patrizis' access to their property.

Wildman argues that for the Patrizis to obtain injunctive relief, they had to prove not just an interference with the easement area but a material interference, citing *Kaiser v. Northwest Shopping Center, Inc.*, 587 S.W.2d 454, 457 (Tex. App.—Dallas 1979, writ ref'd n.r.e.). *Kaiser* does not stand for that proposition. Also, Wildman presents no authority that parked vehicles blocking the road, as the Patrizis testified occurred, was not a material interference with the easement.

We conclude the Patrizis conclusively proved that Wildman, her guests, or her invitees interfered with the easement. That interference authorized the Patrizis to bring suit seeking enforcement of the easement agreement. We overrule Wildman's fifth issue.

### Affirmative Defenses

In her sixth issue, Wildman argues the trial court erred by granting the motion for summary judgment because she created a fact question on multiple affirmative

–29–

defenses. Wildman alleged numerous affirmative defenses. The Patrizis filed a no-evidence motion for summary judgment concerning those defenses. Wildman filed a response. On July 31, 2019, the trial court granted the Patrizis' motion for summary judgment as to many of the defenses, but the court denied the motion for summary judgment as to Wildman's defenses of limitations and that the Patrizis "waived and/or abandoned" their claims. Several weeks later, on September 19, 2019, the Patrizis filed their traditional motion for summary judgment seeking judgment on their breach-of-contract claim and request for a permanent injunction. Wildman filed a response to the motion for summary judgment, but her response did not point out her pending affirmative defenses of limitations, waiver, and abandonment. Instead, her response stated:

> The following issues raised by Defendant remain pending in this suit: (1) Defendant's defense to Plaintiffs' breach [of] contract claim due to ambiguity of the terms of the Agreement. Contrary to the Plaintiffs' assertion that all of Defendant's affirmative defenses and/or counterclaims have been disposed of by the Court or by nonsuit, the issue of ambiguity has not been disposed of. In addition, Defendant has filed a Second Amended Counterpetition against Plaintiffs seeking affirmative relief from this Court, which is also pending.

Wildman stated in her response under the heading "Collateral Estoppel Does Not Apply in this Suit": "Moreover Defendant has raised an affirmative defense involving a fact issue, which has not been fully and fairly litigated and remains pending."

In *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671 (Tex. 1979), the supreme court said, "the non-movant must now, in a written answer or

–30–

response to the motion, expressly present to the trial court those issues that would defeat the movant's right to a summary judgment and failing to do so, may not later assign them as error on appeal." *Id.* at 679. Response to "the motion" means the motion for summary judgment under consideration, not a motion for summary judgment that was ruled on two months' previously. Although Wildman stated in her response that she had "raised an affirmative defense involving a fact issue, which has not been fully and fairly litigated and remains pending," she did not identify that defense. Earlier in that same document, Wildman stated the only defensive issue that remained pending was the ambiguity of the easement agreement. Her response did not identify pending affirmative defenses of limitations, waiver, or abandonment. Because Wildman failed to assert them in her response to the Patrizis' traditional summary judgment, she may not "assign them as error on appeal." *See id.*; *see also* TEX. R. APP. P. 33.1(a). We overrule Wildman's sixth issue.

## Injunctive Relief

In her seventh issue, Wildman contends the trial court erred by granting summary judgment and awarding injunctive relief to the Patrizis because the relief awarded exceeded the relief requested in the pleadings and was not supported by the evidence. Wildman challenges each of the thirteen paragraphs providing injunctive relief.

We review a trial court's issuance of injunctive relief for an abuse of discretion. *Operation Rescue–National v. Planned Parenthood*, 975 S.W.2d 546,

–31–

560 (Tex. 1998). An abuse of discretion occurs when a trial court acts in an unreasonable or arbitrary manner, or without any reference to any guiding rules or principles. *Sandberg*, 600 S.W.3d at 537. A trial court has no discretion to grant injunctive relief without supporting evidence, but it has some latitude in fashioning the details of appropriate relief. *See Operation Rescue–National,* 975 S.W.2d at 560.

In the first paragraph, the order prohibits Wildman from: "Violating in any manner or fashion the corrected Amended Reciprocal Easement Agreement attached hereto (the 'Easement Agreement') with respect to the use of Rabbit Run Road, Anna, Texas." Wildman states this provision's reference to the easement agreement violates Rule of Civil Procedure 683's requirement that the injunction "shall describe in reasonable detail and not by reference to the complaint or other document, the act or acts sought to be restrained." TEX. R. CIV. P. 683. The order states the easement agreement was attached to the order. "Rule 683 is not violated when documents are attached to the injunction and referred to it as part of the injunction because the attachments become part of the injunction itself." *Parham Family Ltd. P'ship v. Morgan*, 434 S.W.3d 774, 789 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (quoting *Layton v. Ball*, 396 S.W.3d 747, 753 (Tex. App.—Tyler 2013, no pet.)).

Wildman also asserts the injunctive relief exceeded the relief requested because the Patrizis pleaded for an injunction prohibiting Wildman from "using the easement for any purpose other than passage," an order "expressly prohibiting

–32–

[Wildman] from parking vehicles or instructing or authorizing its invitees to park vehicles on the easement, or from using the easement for any purpose whatsoever other than passage across same." The order prohibits Wildman from violating the easement agreement "with respect to the use of Rabbit Run Road." Wildman says this order is overbroad and exceeds the relief the Patrizis requested because "the Easement Agreement contains the obligations completely unrelated to the action precipitating the injunction." However, the order prohibited Wildman from violating the easement agreement's provisions concerning "the use of Rabbit Run Road," which were "ingress, egress, passage and delivery by vehicles and pedestrians." The order did not concern the other provisions of the agreement, such as maintenance and improvement of the easement, construction and repair of a road "over or under all or any portion of the easement," or removal of encroachments from the roadway. We conclude the order was not overbroad and did not exceed the relief requested by the Patrizis.

The second paragraph prohibits Wildman from: "Parking and leaving unattended any vehicle of any kind, including vehicles of any kind, motorized or otherwise, and including any kind of trailer, whether for business or personal purposes, for any length of time on or within the boundaries of Rabbit Run Road, Anna, Texas." The third paragraph prohibits Wildman from instructing guests and others from "mak[ing] any use whatsoever of the area within the boundaries of Rabbit Run Road other than in compliance with the express terms of the attached

Easement Agreement." Wildman argues these provisions are vague because the term "boundaries of Rabbit Run Road, Anna, Texas" is undefined. Wildman asserts it is unclear whether "Rabbit Run Road" refers only to the gravel-covered area in the center of the easement area or includes the full thirty-five-foot width of the easement. The easement agreement indicated the entire easement area was "the road right-of-way": "Each Owner ("Grantor Owner") for the benefit of each other Owner ("Grantee Owner"), hereby grants and conveys to each Grantee Owner a non-exclusive easement to use the road right-of-way indicated on the survey map . . . . " The parties' testimony and other evidence established that the roadway was known as Rabbit Run Road. The meaning of Rabbit Run Road is not unclear but refers to the entire area covered by the easement agreement. We conclude Wildman has not shown these paragraphs are improper.

The fourth paragraph prohibits Wildman from "[m]aking any use whatsoever of the area within the boundaries of Rabbit Run Road other than in compliance with the express terms of the attached Easement Agreement." The fifth paragraph enjoins Wildman from instructing her guests and others from "mak[ing] any use whatsoever of the area within the boundaries of Rabbit Run Road other than in compliance with the express terms of the attached Easement Agreement." Here, Wildman repeats the same arguments she made concerning the first three arguments: that the paragraph violates Rule 683 because it refers to another document, it fails to identify the boundaries of Rabbit Run Road, and it exceeds the relief requested in the Patrizis'

–34–

pleadings. As discussed above, the paragraph does not violate Rule 683 because it states the easement agreement was attached to the order, "Rabbit Run Road" refers to the area subject to the easement agreement, and the "use . . . of the area" refers to the uses specified in the easement agreement. Wildman also complains that the order exceeds the scope of the Patrizis' pleadings because it enjoins "violations never complained [of] that may be required of the Easement Agreement"; Wildman does not specify what these violations might be, so she has not shown that the injunction is overbroad. We conclude Wildman has not shown these paragraphs are improper.

The sixth and seventh paragraphs prohibit Wildman from blocking or obstructing or instructing or causing her guests or others to engage in blocking or "obstructing any gates or access to the Patrizi Property on Rabbit Run Road in Anna, Texas, and in Anna Lake Estates, owned by Eric and Annette Patrizi in any way and for any length of time, including parking any vehicle, trailer or other obstacle on Rabbit Run Road in any way that impedes access to or from any such gate." Wildman asserts the terms "obstruct" and "access" are not clear. Wildman cites no authority that "obstruct" and "access" are not clear, nor does she explain what alternative meanings they could have. We conclude she has not shown these terms are unclear. She also argues it is unclear what property belongs to the Patrizis because "the Patrizis are currently litigating adverse possession over that section of the strip between the Patrizis and the Trust property that is not governed by the easement. Moreover, it is conditioned on the Patrizis' ownership and since there are

–35–

three properties on Rabbit Run Road, it may not be readily understood if the Patrizis have acquired that third property." The record contains no evidence that the parties are in litigation concerning the strip of land.[3] However, even if they are, Wildman does not point out what "gates or access" are unclear as to their ownership by the Patrizis. Wildman does not cite to the record supporting her argument that there is a "third property" that may be owned by the Patrizis, and it is not apparent from our review of the record what that "third property" may be. Wildman also argues that the reference to "guests, family members, employees, vendors, clients, customers, volunteers or any other invitees, whether for business or personal purposes" could leave Wildman subject to prosecution if she "or a UPS driver" violated this provision. Certainly if Wildman violated the provision, she could be subject to prosecution. If a UPS or other delivery driver parked in the easement area to make a delivery, Wildman would not be subject to prosecution unless she violated the provision by "instructing, directing, causing, forcing, encouraging or allowing" the UPS driver to block the Patrizis' gates or access to their property. We conclude Wildman has not shown these paragraphs are improper.

---

[3] Wildman's original and first amended counterclaims asserted she and the Patrizis each owned the property to the midway point of the property running west of the easement area. Wildman nonsuited these claims when she filed her Second Amended Counter Petition that did not contain these claims.

Wildman states in her appellant's brief and reply brief that the dispute over ownership of the property west of the easement was tried in a separate cause and that "the Patrizis' claim of adverse possession was soundly rejected by the jury." Wildman states that the western part of the roadway "is now open and free to be used by Ms. Wildman and her invitees." None of that information is in the record on appeal, and we do not consider it.

Paragraph eight prohibits Wildman from "[l]eaving any vehicle, trailer, animals or equipment for any length of time on Rabbit Run Road in any way or for any purpose which is not in strict compliance with the attached Easement Agreement." Paragraph nine prohibits Wildman from "[i]nstructing, directing, causing, forcing, encouraging or allowing" her guests and others to engage in the same conduct. Wildman argues the paragraphs violate Rule 683 because they refer to the easement agreement. As discussed above, this provision does not violate Rule 683 because the order states the easement agreement was attached. She also argues "Rabbit Run Road" is undefined; as discussed above, Rabbit Run Road refers to the area covered by the easement agreement. Wildman also argues the provision is "overbroad and does not balance any of the interests between the parties." Wildman does not specify what interests require balancing or how they might be unbalanced. She also asserts, "Because the preamble lumps a whole host of people that could potentially violate this injunction, Wildman will be left with never inviting anyone to her house for fear that she might be subject to contempt for violating this vague injunction." The injunction enjoins only Wildman, not "a whole host of people." Wildman does not explain how this paragraph is "vague" or why it would prevent her from inviting people to her house. We conclude Wildman has not shown these paragraphs are improper.

Paragraph ten prohibits Wildman from "hav[ing] any vehicles standing on Rabbit Run Road for the purpose of conducting business." Paragraph eleven

–37–

prohibits Wildman from "[i]nstructing, encouraging or allowing any guests, family members, employees, vendors, clients, customers, volunteers or any other invitees to park or stand in their vehicles on Rabbit Run Road for the purpose of conducting business." Paragraph twelve prohibits Wildman from "[u]sing Rabbit Road for the purpose of conducting business at any time." Wildman argues the injunction exceeds the relief requested because the Patrizis' pleading did not request this relief. We agree. The Patrizis' pleadings make no mention of seeking to prevent Wildman from doing business anywhere. We order these provisions stricken.[4]

The thirteenth paragraph prohibits Wildman from "[p]reventing, obstructing, or inhibiting access of [Wildman's] own personal or business invitees to [Wildman's] property in a manner that causes such invitees to utilize Rabbit Run Road in violation of the attached Easement Agreement." Wildman argues on appeal, "For all the reasons set forth above, the Court should void this injunction." This conclusory statement presents no specific arguments or authorities related to this provision. We decline to pick our way through all the previous arguments Wildman had made, with no explanation of how those arguments may apply to this provision, to determine whether any of those apply to this paragraph. This conclusory argument contains no analysis and does not cite any authority. Accordingly, we do not consider it. *See Carrasco v. City of Alvin*, No. 14-06-00687-CV, 2007 WL

---

[4] The fact that we have ordered these paragraphs stricken does not mean Wildman would not violate another provision of the injunction by having a vehicle standing in the easement area while doing business.

900790, at \*5 (Tex. App.—Houston [14th Dist.] Mar. 27, 2007, no pet.) ("Conclusory arguments citing no authority present nothing for our review"). We conclude Wildman has not shown this paragraph is improper.

We sustain Wildman's seventh issue as to paragraphs ten, eleven, and twelve of the injunction and otherwise overrule the issue.

## ATTORNEY'S FEES

In her eighth issue, Wildman contends the trial court erred by awarding the Patrizis their attorney's fees. The Patrizis pleaded for their attorney's fees under section 38.001 of the Texas Civil Practice and Remedies Code. *See* CIV. PRAC. § 38.001(b)(8) ("A person may recover reasonable attorney's fees from an individual or organization . . . , in addition to the amount of a valid claim and costs, if the claim is for: . . . an oral or written contract."). They moved for traditional summary judgment on their right to recover attorney's fees under both section 38.001(b)(8) and a provision in the easement agreement providing that a prevailing party in a suit under the agreement recover attorney's fees. The trial court's order granting the motion for summary judgment found "[t]hat the [Patrizis] are the prevailing party in this proceeding, that [the Patrizis] plead[ed] for attorneys' fees under the Easement Agreement and under Section 38.001 of the Texas Civil Practice and Remedies Code, and as the prevailing party are entitled to recover their attorney's fees under the Easement Agreement and under existing law." The court ordered that the Patrizis "recover their reasonable and necessary attorney's fees from Defendant Liza

–39–

Wildman individually and as trustee of the Springman–Wildman Revocable Trust in an amount to be determined at trial." The trial court held an evidentiary hearing to determine the amount to award the Patrizis for attorney's fees. The court's final judgment ordered that the Patrizis recover various sums from Wildman individually and as trustee of the Springman–Wildman Trust as attorney's fees for trial, "in the event a motion for new trial is filed in this case and denied;" "in the event of an appeal to the Court of Appeals is made by Defendant;" "in the event an application for writ of error is filed by Defendant but not granted by the Supreme Court of Texas;" and "in the event a motion for rehearing is filed by Defendant but not granted by the Supreme Court of Texas."

On appeal, Wildman does not challenge the reasonableness and necessity of the fees awarded. Instead, she argues the trial court erred by awarding fees against her in her individual capacity because the Patrizis should not have prevailed against her in that capacity. We agree. The Patrizis failed to prove conclusively that Wildman in her individual capacity owned property subject to the easement agreement, and they therefore failed to prove that she in her individual capacity was bound by the agreement and breached it. Wildman conclusively proved she owned property subject to the easement agreement only in her capacity as trustee of the Springman–Wildman Revocable Trust. Because Wildman was not liable in her individual capacity under the easement agreement, the trial court erred by making

her liable in her individual capacity for attorney's fees for breach of the easement agreement.

Wildman also argues the trial court erred by not making the award of appellate attorney's fees dependent on her not prevailing on appeal. The judgment awards the Patrizis attorney's fees for appeal as follows: "the further sum of $25,250.00 for Plaintiff's reasonable and necessary attorney's fees is awarded to Plaintiffs and against Defendant in the event of an appeal to the Court of Appeals is made by Defendant . . . ."

"[T]he award of appellate attorney's fees should be dependent on which party prevails on appeal." *Ansell Healthcare Prods., Inc. v. United Med.*, 355 S.W.3d 736, 745 (Tex. App.—Houston [1st Dist.] 2011, pet. denied); *see also In re T.L.T.*, No. 05-16-01367-CV, 2018 WL 1407098, at *5 (Tex. App.—Dallas Mar. 21, 2018, no pet.) (mem. op.) ("An award of appellate attorney's fees, however, must be conditioned on which party prevails on appeal."). In this case, the award of attorney's fees for proceedings before the court of appeals is not conditioned on the Patrizis prevailing in the appeal. However, an unconditional award of attorney's fees does not require reversal but may be remedied by modification of the judgment to make the award contingent upon the receiving party's success on appeal. *Ansell*, 355 S.W.3d at 745; *In re T.L.T.*, 2018 WL 1407098, at *5.

We sustain Wildman's eighth issue in part.

## CONCLUSION

We reverse the trial court's judgment in part and render judgment that the Patrizis take nothing from Wildman in her individual capacity. We modify the judgment by striking paragraphs 10, 11, and 12 of the injunction. We modify the judgment to provide that the award of appellate attorney's fees is conditioned on the Patrizis prevailing on appeal. In all other respects, we affirm the trial court's judgment.

/Lana Myers//
LANA MYERS
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

LIZA WILDMAN,
INDIVIDUALLY AND AS
TRUSTEE OF THE SPRINGMAN-
WILDMAN TRUST, Appellant

No. 05-20-00834-CV     V.

ANNETTE PATRIZI & ERIC
PATRIZI, Appellees

On Appeal from the 219th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 219-02529-
2018.
Opinion delivered by Justice Myers.
Justices Osborne and Nowell
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** in part and judgment is **RENDERED** in part that Annette Patrizi and Eric Patrizi take nothing from Patricia Wildman in her individual capacity.

We **MODIFY** the judgment by striking paragraphs 10, 11, and 12 of the injunctive relief on page 4 of the judgment.

We **MODIFY** paragraph 5 of the award of attorney's fees on page 6 of the judgment as follows:

> 5. the further sum of $25,250.00 for Plaintiffs' reasonable and necessary attorney's fees is awarded to Plaintiffs and against Defendant in the event of an appeal to the Court of Appeals is made by Defendant *and Plaintiffs prevail in that appeal*.

In all other respects, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 25th day of August, 2022.